**Willie Earl CLARK, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. 63–H–137.**

United States District Court
S. D. Texas,
Houston Division.
April 26, 1968.

Lynn R. Coleman, Houston, Tex., for petitioner.

Crawford C. Martin, Atty. Gen., of Texas, Austin, Tex., and Thomas F. Keever, Asst. Atty. Gen., of Texas, Houston, Tex., for respondent.

INGRAHAM, District Judge.

*Memorandum:*

Petitioner, Willie Earl Clark, is a prisoner in state custody pursuant to the judgment and sentence of Criminal District Court No. 3 of Dallas County, Texas, entered on August 16, 1960. After trial by jury, petitioner was found guilty of the offense of burglary and the jury having also found that petitioner had been convicted of two prior felonies less than capital, a life sentence was imposed under the provisions of the Texas recidivist statute, Art. 63, Texas Penal Code. The conviction was affirmed by the Court of Criminal Appeals on March 8, 1961. Clark v. State, 170 Tex.Cr.R. 624, 343 S.W.2d 701 (1961). Two applications for writ of habeas corpus were filed in the Court of Criminal Appeals in 1962 and both were denied. Following denial of the second application, the United States Supreme Court denied certiorari. Clark v. Beto, 372 U.S. 917, 83 S.Ct. 731, 9 L.Ed.2d 723 (1963).

The application for writ of habeas corpus now before this court in this unduly protracted case was originally filed over five years ago on March 5, 1963. After holding an evidentiary hearing, judgment was entered denying the application. Clark v. Beto, 232 F.Supp. 255 (S.D.Tex. 1964). This decision was reversed by the Court of Appeals and the case was remanded for further findings regarding petitioner's competency to stand trial and the effectiveness of his appointed state trial attorney. Clark v. Beto, 359 F.2d 554 (5 CA 1966), cert. denied, 386 U.S. 927, 87 S.Ct. 875, 17 L.Ed.2d 799 (1967). Upon remand a second evidentiary hearing was held and the depositions of relevant witnesses were taken. Counsel for both sides have also submitted extensive briefs of the law.

## I.

At the outset it should be noted that I have serious reservations about the propriety of deciding this case in light of the Court of Appeals' recent decision in State of Texas v. Payton, 390 F.2d 261 (February 12, 1968). It is unquestioned that petitioner has never presented an application for writ of habeas corpus to the state trial court as required by Art. 11.07, Texas Code of Criminal Procedure. I am of the opinion, however, that the Payton case, supra, does not control the case sub judice since the Court of Appeals' remand order specifically requires this court to resolve the issues of competency and effectiveness of counsel. I am clearly not at liberty to disregard the plain language of the remand order.

At the heart of this case is the fact that on July 31, 1931, petitioner was adjudicated insane by a jury in proceedings before the County Court of Dallas County, Texas. The jury found that petitioner was of "unsound mind" and that it was "necessary that he be placed under restraint." As a consequence of these findings and pursuant to the order of the court, the petitioner was committed to the Terrell State Hospital on August 8, 1931. He remained at the hospital and was treated for two or three years with intermittent furloughs and escapes. On June 10, 1933, petitioner was furloughed to the custody of his father and on June 25, 1935, he was finally discharged as "improved" since he had not returned to the hospital during the preceding two years.

██ The parties have stipulated that the 1931 lunacy adjudication has never been vacated by the committing court and that no other court has found that petitioner has regained his sanity. The parties have further stipulated that under the applicable Texas law the burden

of proving competency to stand trial rests upon the state where, as here, there is an outstanding, unvacated adjudication of insanity.[1] The fact that petitioner was discharged from the Terrell State Hospital as "improved" does not affect the presumption of continuing mental incompetency.

The Court of Appeals' remand order directed this court to determine whether petitioner's trial attorney, M. J. Barclay, knew of the outstanding lunacy adjudication at the time of the trial in August 1960. Barclay testified on deposition that petitioner informed him of the lunacy adjudication during the course of the trial. Barclay further testified that he advised the prosecutor of petitioner's representation and that the two of them searched the probate records for about an hour in an attempt to find the judgment. They were unable to find any record of the 1931 proceeding. The parties have stipulated that the lunacy adjudication was on file in the Probate Court at all relevant times and it thus follows that the search was insufficient. The petitioner testified that after Barclay returned from the search he told him that since he had been discharged it would be pointless to pursue the matter further. This was, of course, a misstatement of the law. There is no evidence that the issue of competency to stand trial was ever brought to the attention of the trial judge.

On the basis of the evidence I am constrained to find that petitioner's attorney knew of the 1931 lunacy adjudication at the time of the trial. It by no means follows, however, that Barclay consciously waived the issue of competency to stand trial.

██ It is an established principle that due process is violated by the conviction of a person while he is incompetent to stand trial. Pate v. Robinson,

---

1. Prior to 1958 an unvacated judgment of insanity shifted the burden of proof to the state to establish the sanity of the accused by a preponderance of the evidence. McGee v. State, 155 Tex.Cr.R. 639, 238 S.W.2d 707 (Tex.Crim.App. 1950). The enactment of Art. 5547–81 (b), Vernon's Ann.Tex.St., abolished this presumption where the patient was discharged.

383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). It is likewise well established that there is a presumption against waiver of constitutional rights. Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). In order for there to be an effective waiver there must be "an intentional relinquishment or abandonment of a *known* right of privilege." (Emphasis added.) Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Looking at the facts and circumstances of this case, as I must, it is evident that there was no waiver. Barclay's advice regarding the effect of petitioner's discharge provides evidence of his ignorance in this area. Further corroboration is found in Barclay's reply when asked on deposition what he would have done had he found the record of the 1931 lunacy adjudication. Barclay answered:

> "I would have called a good lawyer and asked him. That's what I would have done then." Barclay deposition page 23.

See Floyd v. United States, 365 F.2d 368 (5 CA 1966), n. 15. Finally, the petitioner's testimony at the hearing demonstrates that petitioner never relented in his attempt to raise the issue of his competency to stand trial.[2]

## II.

■ Having found no waiver, the question now before me is whether petitioner was mentally competent to understand the nature of the proceedings against him and to assist in his own defense at the time of his trial. The recent en banc decision in Lee v. State of Alabama, 386 F.2d 97 (5 CA 1967),[3] teaches that the court must determine initially whether it is possible to hold an adequate hearing on the issue of competency to stand trial before it attempts to ascertain whether petitioner was in fact competent.[4] The threshold question, therefore, is whether this court can make a determination at this time of petitioner's competency as of almost eight years ago. I hold that under the particular facts of this case such a retrospective determination is not possible. This conclusion is dictated by several considerations.

■ First, the sentence being challenged in this proceeding was imposed over seven and one-half years ago in August 1960. I recognize, of course, that the mere passage of time does not make it impossible to hold an adequate hearing on the question of competency. However, in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the Supreme Court emphasized the difficulty of making a retrospective determination of competency and it ordered a new trial even though the defendant had been convicted only a year before. In Pate v. Robinson, supra, the court held that an interval of six years between the time of the trial and the habeas corpus hearing was too long and accordingly it ordered a new trial. In the case at bar not only has it been almost eight years since petitioner's trial, but also any determination is rendered all the more difficult by the fact that the evidence on the issue of competency is conflicting.[5] (See page 276 infra.) These circumstances militate against an accurate determination now of petitioner's competency then.

A second factor favoring issuance of the writ arises out of the state of the medical evidence. It is agreed that petitioner is a man of low average or borderline intelligence. His tested I.Q. is 88. The uncontradicted evidence further

---

2. Transcript pages 119–125.

3. Reversing 364 F.2d 945 (5 CA 1966), rehearing denied, 373 F.2d 82 (5 CA 1967).

4. See Sharp v. Beto, 276 F.Supp. 871, 876 (N.D.Tex.1967).

5. Compare Lee v. State of Alabama, supra, at n. 9 where the court points out that the evidence of Lee's insanity was uncontradicted.

indicates that petitioner contracted syphilis during or slightly before the spring of 1930. As a consequence he became blind in the left eye, deaf in the left ear and he suffered partial facial paralysis.

The psychiatrists and psychologists who have examined petitioner, however, have not been able to agree about his mental condition. The Terrell State Hospital's diagnosis was that petitioner was afflicted with general paresis. The Chief Medical Officer at the Leavenworth Penitentiary concurred in this diagnosis in a "Special Progress Note" dated June 16, 1952. General paresis is an old-fashioned term synonymous with the current term syphilitic encephalitis. Whatever term one uses, it is clear that general paresis is a severely crippling disease which renders the victim incompetent to stand trial.[6] On the other hand, Dr. James Claghorn, a psychiatrist employed by the state who testified at the hearing in this matter, questioned the diagnosis of general paresis. He stated that, in his opinion, petitioner was suffering from meningo-vascular syphilis. Dr. Claghorn's diagnosis was the product of a psychiatric evaluation conducted on January 4, 1968. This diagnosis is consistent with a report from the Parkland Hospital of Dallas, Texas, dated April 8, 1942, and with the findings of S. A. Wurster, a clinical psychologist, contained in a report made on August 18, 1961. Dr. Claghorn further testified that if syphilis was the only incapacitating factor, petitioner was competent to stand trial in August 1960.[7] On cross-examination, however, Dr. Claghorn equivo-

cated about petitioner's competency.[8] Finally, a third proup of psychiatrists and psychologists were simply unable to form an opinion as to petitioner's mental condition.[9]

This brief recapitulation of the medical evidence should make it obvious that there is substantial factual controversy concerning petitioner's mental status. Because of his indigence, however, petitioner was unable to fully develop this issue since he was incapable of employing a psychiatrist to testify on his behalf and to assist him in cross-examining Dr. Claghorn. In these circumstances there was no true adversary proceeding and it was therefore impossible to hold an adequate hearing on the issue of competency. Bush v. McCollum, 231 F.Supp. 560 (N.D.Tex.1964), aff'd, 344 F.2d 672 (5 CA 1965).

Art. 26.05, Texas Code of Criminal Procedure, provides a final consideration dictating that the writ be granted. Under this provision petitioner would have as much as $250 available to him at the retrial for the purpose of procuring expert testimony. In contrast to the situation which obtained in this court, at a new trial the issue of competency could be decided in an adversary proceeding. Pate v. Robinson, supra.

### III.

For the above reasons the petition for writ of habeas corpus will be granted without prejudice to the State of Texas to retry petitioner upon the indictment within a reasonable time.

---

6. Transcript pages 54, 72, 88.

7. Transcript page 60.
   See Johnson v. United States, 344 F. 2d 401, 407 (5 CA 1965), where the value of such "iffy" testimony is discounted.

8. Transcript pages 70–71.

9. See psychiatric report by doctors Settle, Breaux and Johnson dated February 17, 1951, and psychological report by Jerry W. Gunter dated January 3, 1968.