**Burlee CARROLL**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections.**

**Civ. A. No. 1–376.**

United States District Court,
N. D. Texas,
Abilene Division.

Jan. 8, 1971.

---

Charles Erwin, Abilene, Tex., for petitioner.

Allo B. Crow, Asst. Atty. Gen., Austin, Tex., and Ed R. Paynter, Abilene, Tex., for respondent.

## MEMORANDUM OPINION

BREWSTER, District Judge.

This opinion should be considered jointly with this Court's memorandum order herein, dated July 1, 1970, and the amendment thereto, dated September 10, 1970.

The memorandum of July 1, 1970 dealt with the first question the opinion of the Court of Appeals said this Court should resolve on remand; whether it is now possible to determine if petitioner was mentally competent to stand trial at the time of his 1948 murder conviction. Upon the basis of the opinion of an outstanding psychiatrist, with an extensive background of psychiatric examination and treatment of persons charged with crime, the Court answered that question in the affirmative.

The order directed that the convicting state court then hold a hearing within a reasonable time to determine the second question directed by the opinion of the Court of Appeal: whether the petitioner was mentally competent to stand trial on his murder case in 1948. The summer term of federal court in Abilene expired shortly after the first hearing; and between that time and the opening of the September term, further reflection convinced the Court that the hearing on this question should not be held in the state court, as the remedy there had been exhausted by the extensive hearing on this question in 1968. After the Abilene term of federal court began, the amendment of September 10, 1970, was entered retracting the direction that the petitioner return to the state court, and setting a date for a hearing in this Court.

Arrangements were thereupon made whereby the State agreed to pay the expense of a mental examination by Dr. Palasota, a psychiatrist chosen by petitioner and his attorney. The present full, evidentiary hearing was held after the completion of that examination. The petitioner renewed his contention that the passage of time has made it impossible to determine the question of his mental competency to stand trial at the time of his conviction. The Court agreed to reconsider that question, and both the questions set out above were explored at length on this hearing. Among the evi-

dence before the Court on each of such questions is the testimony of the psychiatrists, Dr. Kreimeyer and Dr. Palasota, who appeared in person as witnesses. The Court, after considering the entire record before it, consisting of oral testimony on this hearing, the written psychiatric report admitted in evidence, and the transcript of the proceedings in the state court, concludes (1) that under the circumstances of this case it is now possible to determine whether petitioner was mentally competent to stand trial at the time of his conviction in July, 1948, and (2) that at such time, he then had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him. The Court is therefore of the opinion that the petitioner was mentally competent to stand trial at the time in question, and that his petition for writ of habeas corpus should be denied.

The factual basis for the Court's conclusion that the passage of time had not made it impossible to determine petitioner's mental competency to stand trial at the time of his conviction was discussed in the memorandum order of July 1, 1970. But since the matter was reopened in this hearing and oral psychiatric testimony, pro and con, was heard on the question, the Court will discuss it further and in more detail.

The petitioner cites in support of his contention on this question the cases of Dusky v. United States, 1960, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824; Pate v. Robinson, 1966, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, and Clark v. Beto, S.D.Tex.1968, 283 F.Supp. 272. Those cases do not hold, as petitioner seems to construe them, that in every case the mere passage of time makes it impossible as a matter of law to determine a convict's sanity at the time of his trial.

Each case holds only that, on the basis of the record before the Court, it appeared impractical to make a retrospective determination of the issue of mental competency to stand trial. Judge Ingraham recognized that when he said in Clark v. Beto, supra, at page 275: " * * * I recognize, of course, that the mere passage of time does not make it impossible to hold an adequate hearing on the question of competency. * * * "

The brief per curiam opinion of the Supreme Court in the *Dusky* case was written at the time of the granting of the writ of certiorari, not after hearing and arguments, and followed the suggestion of the Solicitor General (1) as to the test for determining mental competency to stand trial and (2) as to the advisability of holding a new hearing to determine the petitioner's "present competency to stand trial". Up to that time, there was no certainty as to the federal court test for determining mental competency, and the opinion of the Court of Appeals had terminated with a statement of hope that the Supreme Court would grant certiorari and establish such a test.[1] The opinion of the Supreme Court shows that the conclusion that a retrospective determination of the petitioner's mental competency was not advisable in that case was because of "the doubts and ambiguities regarding the legal significance of the psychiatric testimony *in this case* and the *resulting* difficulties of retrospectively determining the petitioner's competency." (Emphasis added). 362 U.S., at 403, 80 S.Ct., at 789. This Court construes that language to mean: (1) There was in that case a difficulty of retrospective determination of the petitioner's mental competency. (2) That difficulty was caused by or resulted from the fact that all prior proceedings, psychiatric and legal, had been conducted without the help of a proper test for determining legal competency. That is

1. " * * * It would, no doubt, be helpful if the Supreme Court would grant certiorari in this or some similar case and clarify the law relating to the test of insanity, the quantum of evidence re- quired to meet the burden of proof of sanity, and other aspects of the problem." Dusky v. United States, 8 Cir., 271 F.2d 385, 401 (1959).

a far cry from holding that the mere passage of time makes it impossible, as a matter of law, to have a retrospective determination of competency in any case.

Pate v. Robinson, supra, was a federal habeas corpus case which raised the question of whether the state convicting court in Illinois should have required *sua sponte* a hearing on the petitioner's mental competency before putting him to trial on his murder case. The Supreme Court held that the failure to have such a hearing was a violation of his constitutional rights. It further held that there was need for a concurrent, rather than a retrospective, determination of the petitioner's mental competency to stand trial. The opinion mentioned the difficulty of making a retrospective determination under the facts of that case, but nowhere intimated that the difficulty would be insurmountable in all cases. The Court had before it no psychiatric testimony on the question.

It is unnecessary to go into an extended discussion of the *Clark* case. Judge Ingraham's statement above quoted that, "the mere passage of time does not make it impossible to hold an adequate hearing on the question of competency", makes the very point that this Court is making—that the matter depends upon the facts of each particular case.

The following factors make this case distinguishable from *Dusky, Pate* and *Clark:*

1. In this case, the Court has competent psychiatric testimony upon which to determine whether the difficulty of a retrospective determination can be made. There was no such testimony to guide the courts in the three cited cases, and they were left to mere speculation.

2. The test for determining mental competency laid down by the Supreme Court in the Dusky case was the one followed by the psychiatrists in making their examinations and reaching their conclusions on that question. It is also the one used by this Court in making its determination of the question. There is no confusion, as there was in the

Dusky case, caused by the "doubts and ambiguities" resulting from lack of a proper legal guide.

3. The psychiatrists had a full and detailed record on the petitioner, much of which was clinical and psychiatric, which covered a span of many years, including the times of the killings and the petitioner's convictions therefor. These consisted of his extensive medical and hospital records while he was in the service before the killings here involved, his medical and hospital records during his 22 years in the penitentiary, and the various reports to the Parole Board when he came up for consideration for parole each year. As the opinion of the Court of Appeals in this case shows, many of the entries in those records were made by psychiatrists, as much of his time in the hospitals over those years was spent in psychiatric wards. The task for the psychiatrists here was to interpret those records, if possible.

4. There is no question about the fact that the petitioner has the same problem now that he had in 1948. Dr. Kreimeyer says that he is clearly competent to stand trial now. If his condition does not make him mentally incompetent now, the same condition did not render him incompetent at the time he was convicted for murder.

The Court of Appeals, after a consideration of the very lengthy record, including those from the hospitals, remanded this case for the purpose of determining, with the help of psychiatric testimony, whether the petitioner's mental competency to stand trial could be determined retrospectively. At the time of such decision, the Court of Appeals had full knowledge of the factors petitioner is now urging in support of his argument against a retrospective determination of his competency. If the passage of time arbitrarily made that determination impossible, why did the Court of Appeals send the case back for a useless hearing on it?

Whether a person's mental competency as of a certain time can be determined retrospectively is a psychiatric question,

rather than a legal one. Judges are no more competent to substitute their judgment on the question for that of a qualified psychiatrist than they are to make such a substitution for the decision of a qualified medical specialist on whether a transplant of a particular vital organ or a successful vaccine for a certain disease is possible. Where there is no expert testimony to aid the judge, he may feel compelled to decide that the difficulties are so great that a retrospective determination appears impossible. But the situation is otherwise where the record contains testimony of qualified experts on the question.

Courts constantly accept psychiatric testimony giving a retrospective determination of the mental condition of an accused. In many cases, the testimony is offered by the defendant in support of his defense of mental unsoundness at the time of the commission of the offense. Sometimes, it is only a few weeks after the commission of the offense when the psychiatrist makes his examination; other times, it may be a matter of months. There are cases where the examination takes place after the case has been appealed and sent back for a new trial. That may be a year or so after the date of the alleged offense. No court would think of arbitrarily rejecting that kind of testimony on the ground of mere passage of time.

The order under which the psychiatric examination at the Big Spring Hospital[2] was made contained, among other things, the following directions:

"1. The officials of the State of Texas who now have Burlee Carroll in custody shall deliver him instanter to the Big Spring State Hospital or to such other hospital under the jurisdiction of the Texas Department of Mental Health and Mental Retardation as may be directed by the authorized officials of such Department.

"2. A qualified psychiatrist of the herein named State Hospital or of some other hospital under the jurisdiction of the Texas Department of Mental Health and Mental Retardation shall give the petitioner, Burlee Carroll, a psychiatric examination to determine the following:

"(1) Is it now possible to determine petitioner's mental competency to stand trial on July 7, 1948, for the offense of murder? The test for such mental competency shall be whether at that time he had a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he then had a rational as well as a factual understanding of the proceedings against him.

"(2) If the answer to the question just above is 'Yes', then was the petitioner mentally competent to stand trial on the murder charge on July 7, 1948?"

The psychiatric report filed after the completion of the examination was admitted in evidence on the hearing to which the July 1, 1970 memorandum relates, and is part of the record now before this Court. It was signed by Dr. James H. Kreimeyer, as Clinical Director of the hospital. The psychiatric staff, as well as the outside psychiatrist from Midland who served as special consultant for the hospital, unanimously concurred ·in the report after having considered it at a staff meeting and having had the petitioner presented to them in person. On the present hearing, Dr. Kreimeyer testified that he verified the report under his witness oath. The report is in great detail and the Court accepts it as being worthy of belief. The following quotation from the July 1; 1970 memorandum summarizes the answers to the questions above quoted:

"An extended discussion of it is unnecessary as it is clear and uncon-

---

2. The Big Spring State Hospital was the mental institution nearest Abilene, where petitioner was being held for the hearing, which had security facilities to prevent escape. It is a long established, respected institution operated under the jurisdiction of the Texas Department of Mental Health and Mental Retardation.

tradicted. The substance of it, insofar as the question now before the Court is concerned, is that while the examining psychiatrists are unable to say 'unequivocally' and 'with absolute certainty' that petitioner was mentally competent at the time of his murder trial, it is their 'clinical opinion that he was competent.' The report gives detailed reasons for such conclusions. It makes it clear that full consideration was given, not only to the findings at the hospital, but to the prior military and prison hospital records in the transcript submitted to them. The mention in the report that the petitioner's competency to stand trial on his murder charge in 1948 cannot be stated 'unequivocally' or 'with absolute certainty' does not detract from the psychiatrists' ultimate opinion or from the Court's conclusion that it is possible to determine now whether the petitioner was mentally competent to stand trial on his murder charge in 1948. No such burden of proof as that is required in a proceeding of this kind." [3]

Dr. Kreimeyer orally reiterated in his testimony on this hearing that in his opinion the petitioner was mentally competent to stand trial at the time of his murder conviction. He based his opinion upon his own physical and psychiatric examination of petitioner, upon the psychological and laboratory reports by members of the staff of the hospital, upon information gained from having petitioner under constant observation for more than two days, upon a study of the detailed prior hospital records of petitioner made while in the military service and while in prison, and upon the additional history of petitioner appearing in the transcript of the proceedings on the habeas corpus hearing in the state court. Dr. Palasota's examination consisted only of the customary interview of about an hour usually practiced by those in the psychoanalytical branch of psychiatry. The following testimony by Dr. Kreimeyer on cross examination by counsel for petitioner shows the reason why Dr. Kreimeyer thought he could give a dependable professional opinion on the question when Dr. Palasota said that he would not risk one:

"Q Now, Dr. Palasota said he would not venture to arrive at an opinion concerning this man's competency in 1948, July of 1948. But you are willing to?

"A To give you an opinion, and I don't blame Dr. Palasota. If I had seen this man just very briefly, even though I had some records, I wouldn't want to. I didn't see him a long time, but I did see him for a total of two full days. I had his behavior report made by a competent RN, and a psychologist educated, if you like, as to what to look for, so I felt—although my first thought was, 'How can anybody give an opinion', and I can't give an unqualified, unequivocal opinion. But it is my professional opinion only, based on the records and my observation."

Dr. Kreimeyer reached his conclusion on the basis of the whole man, while the psychoanalyst was unable to reach one on the basis of his effort to discern only from answers of petitioner in a one hour personal interview his system of internal pressures, their nature and directions, and the childhood experiences which brought them about.[4] A good history of petitioner from sources other than himself was available to Dr. Palasota, just as it was to Dr. Kreimeyer. There is no satisfactory showing that he gave

---

3. That degree of proof is not required even on the issue of insanity on a trial for the offense itself.

4. Those of us who have tried many, many cases, civil and criminal, involving questions of mental competency during our time in private practice, and who have kept abreast of psychiatry since being on the bench, know the profound ideological differences between the psychoanalysts and the other practitioners of psychiatry who claim that the psychoanalysts are seriously circumscribed by their adherence to the purely philosophical tenets of the Freudian faith.

any serious consideration to anything except what he learned from talking to and observing the petitioner himself. He did not consider the report of the psychologist even though he admitted such a report might have been helpful.

The Court was fortunate to have the testimony of a man of Dr. Kreimeyer's competence and expertise in the field of mental illness of persons charged with crime. For about twelve years, he was Superintendent and leading psychiatrist at the Rusk State Hospital, at Rusk, Texas, where most of the "criminally insane" patients in Texas are confined. That hospital has provision to take care of an average of more than 300 such patients all the time. This is a specialized field that presents an entirely different picture from the one hour interview in a psychoanalyst's office usually required when the patient is under no charge of criminal offense. Since he left Rusk State Hospital, Dr. Kreimeyer has been Clinical Director (Chief of the Psychiatric Staff) at the Big Spring State Hospital.

■ Dr. Kreimeyer's professional opinion represents his interpretation as a psychiatrist of the detailed symptoms and conduct of petitioner over a period of about thirty years. Due to the great progress in psychiatry over those years, Dr. Kreimeyer was able to give a more accurate opinion than the psychiatrists of the 1940's and 50's, just as a heart specialist today could review the detailed history of a heart patient recorded 20 years ago and make a more accurate diagnosis than specialists of that era. He was not the first psychiatrist to doubt the accuracy of the decisions of the earlier psychiatrists who treated the petitioner. Dr. Goldbrook of Bryan went on record in 1969 as differing with their diagnoses. Even so, in many cases, a person can have a clinical

mental disorder or deficiency and still be mentally competent, in a criminal case. Fisher v. United States, 1945, 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382; Lee v. Wiman, 5 Cir., 280 F.2d 257, 265 (1960); Mims v. United States, 5 Cir., 375 F.2d 135, 142 (1967).

Dr. Kreimeyer says that the petitioner's problem is a personality disorder, rather than mental illness. The Court accepts that testimony as being worthy of belief.

■ By way of summary, there is in this record the written report of an eminent psychiatrist, verified by him under his oath as a witness, unanimously concurred in by a staff of psychiatrists at a long established state mental institution and by an outside consultant psychiatrist, and the oral testimony of such eminent psychiatrist, all based on an adequate examination and a detailed history over a period of years. They say that the petitioner's mental competency to stand trial at the time of his conviction can be dependably determined retroactively, and that under the Dusky test he was mentally competent. How can any judge with no psychiatric training say that he can arbitrarily disregard such testimony and declare as a matter of law that such a determination cannot be made?[5]

The Court expresses its appreciation to Mr. Charles Erwin whose diligent efforts have made sure that petitioner's claims were fully and ably presented. His work in this case is a credit to the profession.

This opinion, together with the memorandum opinion dated July 1, 1970, will serve as the Court's findings of fact and conclusions of law. Rule 52(a), F.R. Civ.P. An order will be entered denying petitioner's application for writ of habeas corpus.

5. The Court's findings and conclusions would be the same without the concurrences mentioned. It would make such findings and conclusions on the basis of Dr. Kreimeyer's testimony alone.