Gary Wayne **HARKINS**, Appellant,

v.

**STATE of Missouri, Respondent.**

No. 57158.

Supreme Court of Missouri,
Division No. 1.

April 9, 1973.

Motion for Rehearing or to Transfer to Court
En Banc Denied May 14, 1973.

Arthur A. Benson II, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal (taken prior to January 1, 1972) from denial, after evidentiary hearing, of motion under Rule 27.26 to vacate and set aside judgment of conviction entered upon plea of guilty to charge of robbery, first degree, by means of a dangerous and deadly weapon.

On November 2, 1968, information was filed in the Circuit Court of Stoddard County, Missouri, charging Gary Wayne Harkins, his wife Lorine, his brother-in-law Fred Leon Kimble, and Kimble's girl friend Del Swafford, with robbery, first degree, by means of dangerous and deadly weapons, of the Puxico State Bank, on September 3, 1968. On November 4, 1968, Gary Wayne Harkins, in person, in open court, with counsel of his own choosing, J. Martin Hadican, waived formal arraignment, pleaded not guilty, and his case was set for trial December 3, 1968. Mr. Hadican represented his client in all proceedings through allocution and sentence.

On November 30, 1968, all defendants moved for a continuance of the December 3 trial setting, and the State moved for leave to file an amended information charging Gary Wayne Harkins with four prior felony convictions and the armed robbery of the Puxico State Bank.

On December 19, 1968, all defendants moved to disqualify the Honorable William H. Billings, Judge of the Stoddard County Circuit Court, which motion was sustained,

and the Honorable Rex A. Henson, Judge of the 36th Judicial Circuit was designated as special judge.

On February 10, 1969, Judge Henson granted Gary Wayne Harkins severance, accorded him a change of venue to the Circuit Court of Butler County in the 36th Judicial Circuit, and set the case for trial March 28, 1969.

On March 25, 1969, the State filed waiver of the death penalty upon trial of Gary Wayne Harkins; and, on March 26, 1969, defendant filed motion to dismiss the amended information alleging it did not state an offense, and motions to elect and to suppress.

On March 28, 1969, the case came on for trial; the court overruled defendant's motions to dismiss and suppress, and determined that his motion to elect had been satisfied by agreement between the parties. Defendant, by counsel, then sought leave "to amend our former plea of not guilty to not guilty by reason of a mental disease or defect. We are aware that the statutes [Chapter 552, RSMo 1969 V.A.M.S.] provide that such a plea has to be entered at time of arraignment and if it is not so entered, that sufficient cause has to be shown * * * why it was not entered at that time. * * * [I] submit to you that * * * [I was] not aware that any such problem existed * * * until this morning at approximately 7:30 when * * * informed by our client * * * that he had been examined previously by a psychiatrist and had been found to be suffering from a particular type of paranoid disease. This was verified by calling the clinical psychologist at the Missouri State Penitentiary. And I believe the psychologist in turn returned the call to the Court informing the Court that Mr. Harkins had been examined and had been found to be suffering from a * * * paranoid disease. * * * We submit * * * that in view of the fact we were not aware of it, that there is some question we claim that there is sufficient reason to permit us to

enter that plea at this time * * *." The motion was denied by the court, "No good cause being shown."

Defendant, by counsel, then announced that in view of the denial of the motion to change the plea, "we would like to alter our original plea of not guilty and enter a plea of guilty to the charge of robbery by means of a dangerous and deadly weapon as * * * stated in the Amended Information * * *." The court then read the complete charge to the defendant, ascertained that he understood it and that he had no question about it, and then asked how he pleaded, to which defendant answered "Guilty." The prosecuting attorney, upon request of the court, related the facts of the case to prove the charge, and recommended punishment at 25 years' imprisonment. Mr. Hadican then stated: "* * * number one, Mr. Harkins' medical condition is very serious. * * * the man is suffering from cirrhosis of the liver and we have been told that this is a terminal disease. At the present time he is being treated in Springfield for this and a related illness. * * * Secondly, * * * we would respectfully request the Court to take into account the mental problems that Mr. Harkins has encountered in the past. * * * The clinical psychologist at the penitentiary has indicated that Mr. Harkins at one time did suffer from a paranoid disease. * * * also * * * that Mr. Harkins has admitted to the Court that * * * he did hold up this bank." The court then gave defendant additional opportunity to comment on the statements of the prosecuting attorney and Mr. Hadican, and he said nothing other than to confirm them. Allocution was then granted and with neither defendant nor counsel presenting any reason why sentence should not be pronounced, the court assessed defendant's punishment at 25 years' imprisonment and rendered sentence and judgment accordingly.

On February 6 or 9, 1970, Gary Wayne Harkins filed his motion to vacate sentence and to withdraw plea of guilty. He recit-

ed much of the above history and in some fifteen paragraphs related his basis for relief, the substance of which was a contention that he was denied due process of law in that he was denied a hearing on his competency to stand trial. The motion was filed *pro se* although prepared for him by the Legal Assistance to Inmates Clinic of the University of Missouri, Kansas City School of Law, "with my consent." On February 10, 1970, the court directed the court reporter to prepare a transcript of the proceedings of March 28, 1969, and forward it to Mr. Gary Eldredge, a student member of the Clinic.

On April 4, 1970, J. Martin Hadican filed his affidavit in support of the motion reciting his recollection of the proceedings of March 28, 1969; and, on April 6, 1970, the cause was passed at Mr. Hadican's request "to permit filing of additional Motion or Pleadings."

On August 1, 1970, Gary Wayne Harkins filed his "Supplemental Motion" using the form prescribed for motions under Rule 27.26. His statement of all known grounds for relief and of his proof was by reference to the fifteen paragraphs, "2 through 16," of the motion of February 6, 1970.

On August 20, 1970, Robert Popper, Director of the "Inmates Clinic," filed affidavit in support of the motion of February 6, 1970, stating his understanding of the history of the case and the mental history of Gary Wayne Harkins, and attached a transcript of proceedings of August 1, 1969, before the Honorable Robert M. McRae, Jr., Judge of the United States District Court for the Western District of Tennessee, Memphis, Tennessee. The proceedings were in connection with a charge of bank robbery against Gary Wayne Harkins pending in that court and related to an application for mental examination filed in behalf of defendant by J. Martin Hadican, his attorney. The transcript contained testimony of Dr. Kenneth Munden, a psychiatrist; the court's finding that "Defend-

ant is at the time insane, or otherwise so mentally incompetent as to not be able to understand the charges against him, or otherwise properly assist in his defense"; and the judgment "that he be placed in the custody of the Attorney General for appropriate confinement and treatment until such times as he is competent enough to stand trial or this charge is otherwise disposed of." Elsewhere in the record it appears that the attorney general caused Gary Wayne Harkins to be placed in the Federal Medical Center in Springfield, Missouri.

On September 23, 1970, Frank Hearne of the Butler County Bar was appointed counsel for movant and, at some undisclosed time, Ted M. Henson, Jr., of the Butler County Bar also became counsel for movant. Both attorneys were present with movant at the hearing February 23, 1971.

A transcript of the plea proceedings of March 28, 1969, and of the foregoing record (Exhibit A) was received in evidence, as was a deposition of Dr. Kenneth James Munden taken in Memphis, Tennessee, February 12, 1971 (Exhibit B), and the records of State Hospital No. 1 at Fulton, Missouri, pertaining to Gary Wayne Harkins (Exhibit C).

Dr. Munden of the Tennessee Psychiatric Hospital and Institute examined Gary Wayne Harkins June 24, 1969, and October 17, 1970. On both occasions the patient was examined at the hospital-institute and returned to jail the same day. The first interview was for approximately seventy minutes; the second for approximately forty-five minutes. Dr. Munden also had the records of Fulton State Hospital No. 1 and the Federal Medical Center, as well as results of clinical tests administered by other institute personnel.

Dr. Munden stated that the patient was "insane and not competent," identifying the illness as paranoid schizophrenia. There was a "strong likelihood" the condition he determined on the dates of his examination was the same on March 28, 1969. The pa-

tient would have an understanding of the charge against him and not understand his personal responsibility for his act. The patient was described as an intelligent man, able to assist in his defense up to a point. The patient's judgment was poor and his guilty plea was an example of that poor judgment. A person suffering from defendant's mental illness still can understand the nature of the charge and can communicate with and assist counsel.

Dr. Munden's testimony of August 1, 1969, in the federal court resulted from his examination of Gary Wayne Harkins June 24, 1969, and was the basis for that court's finding that defendant was then incompetent to proceed on the charges then and there pending against him.

The records from Fulton State Hospital contained a report of staff conference June 2, 1959, at which Gary Wayne Harkins, age 19, was diagnosed as "Schizoaffective Type of Schizophrenic Reaction."

Gary Wayne Harkins stated his commitment to Fulton State Hospital several years prior to the present charge. He stated he had attempted to kill himself on several occasions and that there was a history of mental illness in his family. He recognized Dr. H. Wayne Glotfelty in the courtroom as one of two doctors he had seen during his twenty months at Springfield Medical Center. He said he had seen Dr. Glotfelty once every three months for two or three minutes each occasion. At Springfield Medical Center he claimed to be suffering from various illnesses such as people plotting against him and seizures. He recalled being in court when he pleaded guilty, his guilty plea, and the presence of his attorney, the prosecuting attorney, and the judge. He said he pleaded guilty because he was told to do so by his attorney, because his attorney told him he would be hospitalized, that he would get fifteen years, and that his pregnant wife would be turned loose. He told his attorney of his mental problems four or five months before he pleaded guilty, and he denied having any other illness or mental problem

other than seizures and his attitude about people. He was in City Hospital for stomach trouble while the robbery case was pending and was transferred to Springfield Medical Center for treatment. He was taken from there to Memphis, then back to Springfield, then to Poplar Bluff for trial, then again to Memphis, and finally back to Springfield where he remained until this hearing.

At the conclusion of movant's evidence, he offered the transcript of federal proceedings, to which the State's objection that it was not properly identified or authenticated, that it was hearsay and a finding of another court, irrelevant on the present issue, was sustained.

The State called Dr. H. Wayne Glotfelty, Chief of Psychiatry at the Federal Medical Center, Springfield, Missouri. Gary Wayne Harkins was first admitted to the Center February 10, 1969, and remained there until discharged March 16, 1969, with a diagnosis of abdominal pains, cause undetermined, and "anxiety, neurosis." He was again admitted August 22, 1969, was assigned to the psychiatric division, and remained there until September 6, 1970. He subsequently returned December 2, 1970, and remained until December 19, 1971. Dr. Glotfelty stated the patient required a long period of observation for purposes of an opinion on his ability to assist in the defense of a criminal charge. In his opinion, the patient had present ability to cooperate with counsel in defense of a criminal charge, that he had such ability at the time of his admission to the psychiatric division August 22, 1969, and that with respect to March 28, 1969, there had been no substantial change in his condition "through the years." The records from Fulton State Hospital did not alter his opinion—"it just makes it more firm." Although diagnosed by Fulton State Hospital when first transferred there in 1959 that the patient was a paranoid schizophrenic, "that was not their diagnosis when he left," and such diagnosis "is not borne out by any psychological test." He felt the patient had "a personality pattern disturbance which tends to show that he is emotionally immature. And the term that is not used in the present day psychiatric terminology that I would use is socialpathic [sociopathic] and a few years ago the term would have been psychopathic." His diagnosis was also in disagreement with that of Dr. Munden. When asked his opinion whether Gary Wayne Harkins would have the mental capacity to understand the nature of the robbery charge against him, Dr. Glotfelty stated "that from listening to Mr. Harkins talking here earlier, I believe he could understand it. He probably understood it better than I would."

In denial of relief, the court found and concluded:

"Movant had been released on bond on this charge on September 4, 1968, and remained at liberty until February, 1969. During this period, he had the opportunity to freely consult his retained counsel and did consult him on various occasions. In February of 1969, Movant was arrested on another charge and was conveyed to the City of St. Louis where he was placed in a hospital for treatment of a physical condition. He was transferred to the U. S. Medical Center at Springfield, Missouri, on or about the 17th day of February, 1969, for treatment of the physical condition. He remained at the Medical Center until March 28, 1969, when he appeared in the Circuit Court of Butler County for trial. After sentencing he was taken by federal authorities to Memphis, Tennessee, for trial in the U. S. District Court upon a charge of robbing a bank in the State of Tennessee. Movant was returned to the Medical Center on August 26, 1969, as a result of the action of the federal court in Memphis, and remained at the Medical Center until the evidentiary hearing in this case.

" * * * Section 552.020 provides that no person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in

his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures. The question of fitness to proceed may be raised at any time. If there is any substantial indication, or good cause to believe that a defendant lacks the mental capacity to understand the charges against him and to assist in his own defense a competency hearing should be held. State v. Lowe, Mo., 442 S.W.2d 525. The presence of mental illness does not equate with incompetency to stand trial, and the test of competency to stand trial is whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understandings and whether he has rational, as well as factual, understanding of the proceedings against him. Section 552.030 provides that a person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he did not know or appreciate the nature, quality or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law. A plea of not guilty by reason of mental disease or defect excluding responsibility under this section should be filed within ten days after a plea of not guilty is entered, except for good cause.

"The Court finds the testimony of Dr. Wayne Glotfelty to be convincing and true, and finds the testimony of Dr. Munden to be unpersuasive. The Court further finds that the files and records of State Hospital #1 establish that at the time Movant was released from that institution he did not suffer from any mental disease or defect excluding responsibility.

"This Court personally observed Movant at the times of his appearances before the Court, particularly at the time the plea of guilty was entered on March 28, 1969, and at the time of the evidentiary hearing on February 23, 1971. The Court finds that the portion of the testimony of Movant wherein he pretended and claimed to have certain mental deficiencies and lapses was false and not worthy of belief.

"The Court finds that on March 28, 1969, there was no indication or good cause to believe that Movant was unfit to proceed or that he had a mental disease or defect excluding responsibility. The Court further finds Movant's lawyer had previously known of the treatment of Movant at State Hospital #1, and that the motion filed on the day of trial was not made in good faith, but was made only for the purpose of delay.

"The Court finds that Movant at all times from the time of the commission of the offense through the evidentiary hearing, was fully competent to understand the charge against him and to cooperate with his lawyer in the defense of his case; that clearly he was competent to proceed; and that he had no mental disease or defect excluding responsibility. This finding is fully substantiated by the evidence and by the observation of Movant by the Court * * *."

These findings and conclusions in denial of relief to movant are presumed to be correct and are to be affirmed unless clearly erroneous. Rule 27.26, V.A.M.R. supra; Crosswhite v. State, 426 S.W.2d 67 (Mo.1968).

Appellant's principal contention, Point 3, is that he was denied constitutional due process in that (a) he was denied a hearing to determine his competence to stand trial, and (b) he did not intelligently waive his right to such hearing. He asserts under (a) that "the conviction of an accused person while he is legally incompetent violates due process," citing Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L. Ed.2d 815 (1966); and under (b) "where appellant's counsel failed to apprise himself of facts concerning appellant's history of mental disease and make a reasonable investigation thereof appellant cannot be held to have intelligently waived his right to a competency hearing under Section 552.020, V.A.M.S.," citing Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), that waiver applies only

to intentional relinquishment or abandonment of a known right, and Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and Pate v. Robinson, supra, 383 U.S., l.c. 384, 86 S.Ct. 836, that failure to make certain actions or choice by counsel alone cannot be considered a waiver absent evidence of a considered choice. Linked to this contention is Point 5 by which appellant asserts the findings, conclusion and judgment accepting the testimony of Dr. Glotfelty and rejecting the testimony of Dr. Munden as unpersuasive are clearly erroneous.

■ It is not necessary to determine whether the trial court improperly denied defendant a competency hearing March 28, 1969. Pate v. Robinson, supra, 383 U.S. l. c. 385, 86 S.Ct. l.c. 842, requires a trial judge to resolve a pretrial question of competence only "where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial"; and the facts and circumstances peculiar to that case rendered it impossible to provide a "meaningful hearing on that issue at this late date," i.e., "six years after the fact." 383 U.S. l. c. 377, 387, 86 S.Ct. l.c. 838, 843.

However, not every situation in which there was no pretrial hearing to determine competency requires a vacation of the conviction, because a postconviction hearing on the issue may be sufficient in some cases. See Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), where the cause was remanded to the district court for a hearing on the issue of petitioner's sanity at the time of his trial. See also Carroll v. Beto, 421 F.2d 1065 (5th Cir. 1970), on remand, 330 F.Supp. 71 (Tex.D.C.1971), affirmed 446 F.2d 648 (5th Cir. 1971); Conner v. Wingo, 429 F. 2d 630 (6th Cir. 1970); Barefield v. State of New Mexico, 434 F.2d 307 (10th Cir. 1970), certiorari denied 401 U.S. 959, 91 S.Ct. 969, 28 L.Ed.2d 244 (1971); Clark v. Beto, 415 F.2d 71 (5th Cir. 1969), and see also Evans v. State, 467 S.W.2d 920 (Mo. 1971).

■ Factors for consideration in determining whether a postconviction hearing is adequate for retrospective resolution of the issue of competence to stand trial are presence of competent psychiatric testimony, application of proper legal standards, and availability to psychiatrists of a comprehensive record. Carroll v. Beto, supra.

■ The appropriate legal standards are whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed. 2d 824 (1960). These have also been expressed as whether the defendant can intelligently participate in his defense, cooperate with counsel, and understand the proceedings. State v. Lowe, 442 S.W.2d 525 (Mo.1969). To these might be added that some degree of mental illness does not equate with incompetency to stand trial. Butler v. United States, 384 F.2d 522, 523[2] (8th Cir. 1967), certiorari denied 391 U.S. 952, 88 S.Ct. 1854, 20 L.Ed.2d 865 (1968).

■ In contrast to the situation in Pate v. Robinson, supra, competent psychiatric testimony from two doctors who had for their consideration their own tests and observations, and a comprehensive record, medical, hospital, and otherwise, of their patient, were available to the court in the postconviction hearing. Both doctors related their findings and opinions as to defendant's condition at the time he pleaded guilty; and any conflict in their views was resolved by the trial court as demonstrated by the findings. In its resolution of the conflict, the trial court preferred the testimony of Dr. Glotfelty to that of Dr. Munden. Such was not clearly erroneous because the record shows that Dr. Glotfelty had greater opportunity over a greater period of time for his observations and conclusions than did Dr. Munden, and that he had access to prior records and tests simi-

lar to those available to Dr. Munden. Except for the difference with Dr. Munden, his opinion is not inconsistent with the other evidence on the issue.

In this respect appellant also complains by a charge of error, Point 1, that the court erred in excluding the transcript of the proceedings in the Tennessee Federal District Court.

■ The determination by that court that Gary Wayne Harkins was not competent to stand trial there on August 1, 1969, was otherwise established in the record, and the court's finding to that effect is no more persuasive than Dr. Munden's testimony which was the basis for it. Hodges v. United States, 408 F.2d 543, 555 (8th Cir. 1969). Accordingly, it was at most cumulative of an uncontested fact, and its exclusion does not constitute error.

■ By Point 2 appellant charges he was denied effective assistance of counsel in connection with his appeal; and, by Point 4, he charges the court with failure to comply with Rule 25.04 with respect to the voluntariness of his guilty plea.

As demonstrated by the motion and statement, neither of these matters was alleged as grounds for relief by Gary Wayne Harkins, and the full evidentiary hearing accorded him did not, in any way, focus on such questions. Accordingly, they are not issues to be considered on this appeal. Rule 27.26, supra; State v. Hegwood, 415 S.W.2d 788, 791[4] (Mo.1967).

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All of the Judges concur.