Willie Earl CLARK, Petitioner,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.

Civ. A. No. 63-H-137.

United States District Court
S. D. Texas,
Houston Division.
July 22, 1964.

Charles D. Cottingham, Jr., Houston, Tex., for petitioner.

Waggoner Carr, Atty. Gen., Austin, Tex., and Sam R. Wilson, Asst. Atty. Gen., Houston, Tex., for respondent.

INGRAHAM, District Judge.

Petitioner, Willie Earl Clark, is a prisoner in state custody pursuant to judgment and sentence of Criminal District Court No. 3, Dallas County, entered on August 16, 1961. After trial by jury, petitioner was found guilty of the offense of burglary as charged, and it was further found that petitioner had been convicted of two prior felonies as alleged in the indictment. A life sentence was imposed in accordance with the Texas recidivist statute, Art. 63, Vernon's Ann. Texas Penal Code, and notice of appeal was given to the Court of Criminal Appeals of Texas. Petitioner's application of direct appeal was denied on March 8, 1961. Subsequently, two applications for writ of habeas corpus were filed with that same court and both were denied. Thereafter, on August 10, 1962, a petition for writ of certiorari was filed with the Supreme Court of the United States. This was denied without written order on February 18, 1963.

Having thus exhausted his state remedies, petitioner sent an application for writ of habeas corpus to this court, accompanied by a pauper's oath and a motion for leave to proceed in forma pauperis.[1] The court allowed the petition to be filed on March 5, 1963. Leave was granted for petitioner to proceed in forma pauperis, and the state was directed to respond. After the state's answer and petitioner's traverse were filed, upon motion of the petitioner, an attorney of this court, Mr. C. D. Cottingham, was appointed to represent petitioner in this court only. An oral hearing was held, and at the conclusion of the hearing the court asked that briefs be filed by each side. After having thoroughly examined the exhibits, records and briefs, and after having considered the evidence adduced at the hearing, the court is of the opinion that petitioner's application for writ of habeas corpus should be denied.

The essence of the complaint is that petitioner was legally insane at the time of the purported burglary, and that one who is insane is not criminally responsible for his actions. This contention was first raised in petitioner's application for writ of habeas corpus in the Texas Court of Criminal Appeals. In order to substantiate petitioner's allegation of insanity it was shown that petitioner was adjudged insane by a jury in the County Court of Dallas County, Texas, on July

1. A previous application for habeas corpus in this court was denied on August 3, 1962, on the grounds that petitioner had not met the jurisdictional requisite of exhaustion of remedies. 28 U.S.C.A. § 2254.

31, 1931, and committed to the State Hospital at Terrell, Texas, where he remained until June 25, 1935. He was at that time released as "improved", but there has not been, subsequent to 1931, a formal adjudication of his sanity. Petitioner argues that an unvacated judgment of insanity shifts the burden to the state to establish the defendant's sanity at the time the offense was committed. E. g., Saucier v. State, 156 Tex.Cr.R. 301, 235 S.W.2d 903 (1950), cert. denied 341 U.S. 949, 71 S.Ct. 1016, 95 L.Ed. 1372 (1950). Since his sanity was not established by the state, in accordance with this rule, petitioner argues that he is being held unconstitutionally.

Respondent argues, on the other hand, that the petitioner should have raised the question of insanity at the time of his trial or on appeal therefrom. Furthermore, respondent urges that there is sufficient evidence so that this court should find that petitioner was sane and competent to stand trial on the date he was tried.

Both parties misconstrue the function of the federal court in hearing a habeas corpus petition. The purpose of habeas corpus is to determine if a person is being held in violation of his constitutional rights. Misapplication of state law, be the rule evidentiary or substantive, does not alone constitute a denial of due process. See Gryger v. Burke, 334 U.S. 728, 731, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948). Nor does this court have the authority in a habeas corpus hearing to make a determination of a defendant's sanity at the time of his trial.[2] The cases of Brown v. United States, 267 F.2d 42 (5th Cir. 1959), and Gregori v. United States, 243 F.2d 47, 48 (5th Cir. 1957), may seem to indicate otherwise. But these cases only stand for the proposition that a *federal* prisoner may raise the question of his insanity at the time of trial on a motion under 28 U.S.C.A. § 2255. The question of whether a *state* prisoner has been accorded his constitutional rights is materially different. This was made abundantly clear in Lee v. Wiman, 280 F.2d 257 (5th Cir. 1960). What must now be determined is whether the failure of the state, at the time of the trial, to show the defendant's sanity constitutes a violation of petitioner's constitutional rights.

On July 31, 1931, petitioner was adjudicated a lunatic by a jury and committed to the state asylum for treatment. At the hospital, petitioner's condition was diagnosed as syphilis: general paresis. And on June 25, 1935, petitioner was discharged as "improved". The Texas statutes are clear evidence that the laws of Texas amply provide for recognition of the humane doctrine prevailing in all common law jurisdictions that a person cannot be tried for criminal misconduct while he is insane.[3] "Insanity", however, is a word of broad significance and of varied meanings, depending largely upon the transaction in relation to which it is employed.

In proceedings to commit a person to a mental hospital, the general mental condition of the subject is in issue. These proceedings contemplate a determination of whether the person involved is mentally ill so as to be dangerous to himself or others, and, in order to protect society, a proper subject for commitment to a mental hospital. See, Pure Oil Co. v. Clark, 56 S.W.2d 850 (Comm. of App.Tex.1933). In other cases the law is primarily concerned with the ability of the person to comprehend the effect or consequences of the particular act under investigation. It is an ancient rule of law that an insane person cannot be held legally responsible for his criminal acts.

2. It would appear, in any event, that the problem is whether the defendant was insane at the time of the burglary rather than at the time of the trial. While it is true that, under Texas law, a person who is insane at the time of the trial cannot be tried, petitioner is alleging that no criminal responsibility should have attached to his acts. Such an allegation goes to the question of insanity at the time of the act.

3. Art. 34, Texas Penal Code.

The test in Texas, however, is not that an accused is mentally ill or of unsound mind, but whether he is laboring under such defect of reason that he is unable to distinguish right from wrong, or to know the nature and consequences of his act. E. g., In re Hodges, 166 Tex.Cr.R. 433, 314 S.W.2d 581 (1958). These different standards are clearly illustrated by the testimony of Dr. W. M. Hall, the County Health Officer of Dallas County, during the 1931 commitment proceedings. He said of petitioner, "He knows right from wrong, and knows what he is doing, but I don't think he has sufficient will-power to keep him right."

■■■ In view of the differing standards applied in determining insanity, this court finds it difficult to hold that petitioner was deprived of his freedom without due process of law when he was convicted of a felony without regard to his prior adjudication of insanity. It is true that in Texas the prior commitment acts so as to shift the burden of proof on the question of insanity in a criminal case. A rebuttable presumption does arise that petitioner was and is insane until that prior adjudication is set aside. E. g., Dudley v. State, 157 Tex.Cr.R. 334, 248 S.W.2d 934 (1952); McGee v. State, 155 Tex.Cr.R. 639, 238 S.W.2d 707 (1950).[4] But the most that can be said is that the state failed to comply with a particular evidentiary rule. It is not a fundamental right that a person who has been adjudged insane on one standard *must* be free of all criminal responsibility (which is based on a different standard) until that prior adjudication is reversed. Nor does such a person have a fundamental, constitutional right that requires the state to bring in the issue of insanity and then rebut the presumption which arises due to the operation of a state rule of evidence. Yet that is what petitioner urges this court to hold. It is urged that twenty-nine years after petitioner was committed to a mental institution; after two intervening convictions of a felony; after trial in the instant case before a jury; and after appeal to the Texas Court of Criminal Appeals; the state had the burden of going forward at the trial with proof of petitioner's sanity without petitioner ever having raised the issue and without having apprised the state of any contention of insanity. That may or may not be technically required by state law, but it is not required by the Constitution of the United States.

Furthermore, both the fact that the defendant was represented by counsel at the time of his trial and the fact that he was released from his commitment as "improved" must be taken as mitigating factors against petitioner's claim of abridgment of federal constitutional rights. This decision is in no way to be taken as indicating a determination by this court of the question of petitioner's prior or present sanity. It does mean that this court feels petitioner has not been deprived of any constitutional right, regardless of any state evidentiary presumption which attaches to commitment proceedings.

There being no abridgment of a federal constitutional guarantee alleged by petitioner, it is ordered, adjudged and decreed that the petition of Willie Earl Clark for writ of habeas corpus be and it is hereby denied.

The clerk will record this Memorandum and Order on the minutes of the court and will forward true copies hereof to the petitioner and the attorneys of record.

4. It should be noted that such a presumption would not arise in Texas if the inmate were released from the mental hospital after 1958. The adoption of the Mental Health Code, Art. 5547–81, Vernon's Civil Statutes of Texas, did away with the presumption in cases where the inmate is discharged. Section (b) provides, "The discharge of a patient who has been found mentally incompetent terminates the presumption that he is mentally incompetent." The Texas Court of Criminal Appeals, in Amos v. State, 169 Tex.Cr.R. 44, 331 S.W.2d 225 (1960), refused to make this provision effective as to anyone discharged prior to its adoption. This court, therefore, treats the instant case accordingly.