**Tommy Preston MARSHBURN, Appellant,**

v.

**The STATE of Texas, Appellee (two cases).**

**Nos. 49075, 49076.**

*Court of Criminal Appeals of Texas.*

Feb. 26, 1975.

Rehearing Denied May 21, 1975.

Tom A. Boardman and Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty. and W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant was convicted of the offenses of attempted escape and robbery by assault. Punishment was assessed by the jury at 15 years for attempted escape and at 500 years for robbery by assault.

Because of our disposition of the case, no discussion of the facts in either cause is necessary. Appellant was tried jointly and concurrently with several co-defendants for robbery by assault and attempted escape.

Appellant complains that the prosecutor's argument to the jury at the close of the punishment stage of the trial was manifestly improper because it invited the jury to apply the parole law in assessing punishment. We agree.[1] The record reflects the following argument by the prosecutor:

"The Judge has told you in his charge that *you have no control over the exact term of years that these men will serve; that's to be determined by the Board of Pardons and Paroles* and you will look in

---

1. We recognize from the dissent's desire to set out all the facts of this case, although they are of no relevance to the disposition of this ground of error, that it is concerned with the fact that two senseless crimes were committed. We were never unmindful of that fact. What is regrettable is that a prosecutor, who certainly must have been aware of the vice in his chosen line of argument, should pursue a path which could only lead to reversal and the waste of time, energy, and state funds by the requirement of a retrial of these cases. No useful or legitimate purpose was served by the argument pursued. See Boyde v. State, Tex.Cr.App., 513 S.W.2d 588; Lopez v. State, Tex.Cr.App., 500 S.W.2d 844. See also Renn v. State, Tex.Cr.App., 495 S.W.2d 922; Stein v. State, Tex.Cr.App., 492 S.W.2d 548.

these judgments and you will find being sentenced from anywhere from two to five years *and you say five years and two years later they are out committing another offense. Look at the records.*" (Emphasis supplied.)

The objection that this argument was improperly going into how long the convicted will actually have to serve was overruled. Prior to this argument, the prosecutor made other references to the potential effect of a long term of years upon the parole authority:

"The Judge told you you can't consider how long these people are going to serve when they are in the penitentiary. I would suggest to you the only way that you are going to do any good and help us here in Dallas County is to make examples of each and every one of the five . . .

" . . . You know the big verdicts you hear about are not reasonable. . . you know no person has lived 2,000 years. . . . You know no man can live that long, but I say *you have to do something* to draw attention, to make these people different than the rest of the people in the jail, *to make somebody, somebody who decides how long they are actually going to serve,* say this is different than the rest of the life cases that we see. There is something special about this case. I can see right here by the verdict it stands out, I better look into this." (Emphasis supplied.)

■ It was stated in Alejandro v. State, Tex.Cr.App., 493 S.W.2d 230 at 231 that to be approved by this Court, "[J]ury arguments need to be within the areas of (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." (Citations omitted from text). The arguments of the prosecutor *do not come within any of the* permissible areas of jury argument. On the contrary, the prosecutor's arguments were calculated to introduce prejudice into the minds of the jurors. Cf. Hernandez v. State, Tex.Cr.App., 366 S.W.2d 575 at 576. The prejudice introduced by the prosecutor operates by urging the jury to impose an excessive prison term to compensate for or protect against the action of the Board of Pardons and Paroles.

The prosecutor said, in relation to the term of years prisoners were required to serve by the Board of Pardons and Paroles, "and you [the jury] say five years and two years later they [the defendants] are out committing another offense." This argument demonstrated the operation of the parole laws by inviting the jury to look at records of prior offenses which had been introduced into evidence to see how long it would take for a defendant to be released by the Board of Pardons and Paroles as compared to the length of the sentence originally assessed. The effect of this argument is to demonstrate past applications of the parole law, asking the jury to increase the punishment which would otherwise be assessed, in the ratio of five to two, so that the defendants will actually stay in prison for the length of time desired by the jury.

■ The State contends the prosecutor's argument was a logical deduction from the records introduced in evidence. The records were not and could not be introduced for the purpose of making the calculation suggested by the State, and its argument that they should be put to such use was not a proper deduction from the evidence. The prosecutor was not recommending a severe punishment based on the evidence, "but urged such penalty in view of how the parole law operated." Dorsey v. State, Tex. Cr.App., 450 S.W.2d 332 at 337 (Dissenting Opinions, Onion, J., Morrison, J.)

The judgments in both causes are reversed and remanded.

DOUGLAS, Judge (dissenting).

The majority reverses these convictions without discussing the facts, without discussing the arguments of defense counsel,

without discussing the argument cited in the majority opinion where no objection was made and without mentioning the instruction given by the court following the complained of argument. The facts and circumstances of the case and the setting in which an argument is made should be considered before reversing a case on the ground of alleged improper argument.

Appellant and four others, Bobby Joe Bridger, Christopher Lee Warren, William Howard Key and Stephen Dwight Thompson,[1] were convicted of attempted escape and robbery by assault. Both charges rose out of the same incident—an attempted escape from the Dallas County jail.

The escape attempt started when Marshburn, appellant, lured Officer Pickering, a guard, into a vestibule area on the pretext of getting some papers notarized. When Pickering opened the door from the safety zone into the vestibule area, Marshburn, with a pistol at his side, stepped out and said, "Pickering, this is for real, back up against the wall." When Pickering tried to disarm Marshburn, Marshburn shot and wounded Pickering. Pickering fell to the floor, tried to crawl away and then collapsed.

Immediately prior to the shot, Officer Smart, another guard, had entered the vestibule and walked by Marshburn and Pickering when he saw that Marshburn had a gun. Smart started toward the two and saw Marshburn shoot Pickering. Marshburn turned and then put the gun in Smart's face. He told him three times to pull the latch and let the men out of their cells. Co-defendants Warren and Bridger immediately seized him, backed him against the wall at knife point and told him to strip his clothes off. Marshburn came over and pointed the gun at Smart and Smart proceeded to strip off his trousers and shirt. In the trousers was a billfold containing $317. After Smart removed the clothes Warren took them and left.

Officer Miller was standing in the picket position on Floor 6M when he heard shots. When he saw Pickering on the floor, he set off the alarm. He turned to shut the door to the picket area and saw Marshburn pointing the gun at him. Standing with Marshburn were eight to ten prisoners including Key and Thompson. Marshburn said, "Open up or I'll kill you." They entered the office and jerked the telephones and intercoms loose.

Several of the prisoners placed Miller in the elevator and tried but could not operate it. They then proceeded to take Miller down the steps of the first floor. While this was going on Marshburn held a gun on Miller. The elevator would not work and the steel door on the first floor was locked. The escape attempt was thwarted. Upon this evidence the jury found the appellant and his co-defendants guilty.

At the punishment stage of the trial the State properly introduced "pen packets" on each defendant showing their prior final convictions under Article 37.07, Vernon's Ann.C.C.P. The information before the jury for their deliberation of punishment included the following final convictions for each defendant:

(1) Thomas Preston Marshburn

   (a) Swindling Under $50; convicted—June 29, 1961; sentence—1 day in the county jail.
   (b) Felony theft; convicted—June 30, 1961; sentence—2 years, probated. Probation revoked March 30, 1962.
   (c) Passing of forged instruments; convicted—February 17, 1964; sentence—3 years.
   (d) Attempted robbery; convicted—October 21, 1969; sentence—two years.

---

1. Bobby Joe Bridger appealed his conviction; it was affirmed by this Court in a per curiam opinion. Stephen Dwight Thompson appealed his conviction and it was affirmed at 514 S. W.2d 275 (Tex.Cr.App.1974).

(e) Misdemeanor DWI; convicted—January 6, 1971; sentence—fine and 30 days in county jail.

(2) William Howard Key
    (a) Felony theft; convicted—March 12, 1948; sentence—two years.
    (b) Carrying a pistol; convicted—February 25, 1949; sentence—90 days.
    (c) Felony theft; convicted—July 13, 1953; sentence—five years.
    (d) Carrying a pistol; convicted—April 3, 1964; sentence—90 days.
    (e) Burglary, five counts, and felony theft; convicted—June 10, 1964; sentence on each—eight years, concurrent.
    (f) Robbery, enhanced; convicted—May 21, 1971; sentence—life.[2]

(3) Bobby Joe Bridger
    (a) Burglary; convicted—October 4, 1955; sentence—five years, probated. Probation revoked March 28, 1956.
    (b) Felony theft and burglary; convicted—March 28, 1956; sentence in each case—five years, all sentences to run concurrent.

(4) Christopher Lee Warren
    (a) Robbery; convicted—August 6, 1971; sentence—five years, probated. Probation revoked April 13, 1972.

(5) Stephen Dwight Thompson
    (a) Burglary of a private residence at night; convicted—September 9, 1971; sentence—49 years.[3]
    (b) Assault with intent to murder with malice, kidnapping, and felony theft; convicted—August 25, 1972; sentence in each—ten years to run concurrent.[4]

At the guilt stage of the trial, it was before the jury that the codefendants were legally confined in the jail from which they attempted to escape.

Marshburn, appellant, had been convicted on February 4, 1971, of robbery and sentenced to 75 years. He was awaiting the results of his appeal.[5] Key was awaiting transfer to the Texas Department of Corrections to serve his life sentence for robbery that was affirmed by this Court. Bridger had been convicted on March 21, 1972, of robbery and sentenced to life.[6] Warren had just been convicted of robbery by assault on March 7, 1972, and his punishment was finally assessed at twenty-eight years on July 20, 1972. He withdrew his notice of appeal. Thompson was awaiting the results of his appeal upon his conviction of burglary of a private residence which was affirmed before the trial in this cause. Thus, the above information formed a basis of the State's argument on the amount of punishment the jury should assess for each defendant.

In his initial argument at the punishment stage of the trial, the assistant district attorney requested that the jury make examples of these defendants. He said:

"Your verdict is going to mean one of two things. * * * [T]he simple thing would be to sit down and write life on each one of these cases, but that hasn't drawn any attention to the defendant's mind before. * * * [T]he only thing you can do that's going to do any of these people any good is to put them away for a long time, just prevent them from getting out there and raising havoc and hell in Dallas County.

"The Judge told you you can't consider how long these people are going to serve when they are in the penitentiary. I

---

2. Affirmed 486 S.W.2d 958 (Tex.Cr.App. 1972). Reported as Keys v. State, but throughout this trial the name used by himself and others was Key.

3. Affirmed 486 S.W.2d 343 (Tex.Cr.App. 1972).

4. Affirmed per curiam, June 6, 1973.

5. Affirmed 491 S.W.2d 663 (Tex.Cr.App. 1973).

6. Affirmed 503 S.W.2d 801 (Tex.Cr.App. 1974).

would suggest to you the only way that you are going to do any good and help us here in Dallas County is to make examples out of each and every one of the five. . . .

"I think you will have to search long and hard to say—you know the big verdicts you hear about are not reasonable. I mean, they are really not, but you are not to consider how long a person can live, but you know no person has lived two thousand years. I mean that's just reasonable. You know no man can live that long, but I say you have to do something to draw attention, *to make these people different than the rest of the people in the jail, to make somebody, somebody who decides how long they are actually going to serve, say this is different than the rest of the life cases that we see.* There is something special about this case. I can see right hereby the verdict it stands out, I'd better look into this." (Emphasis supplied)

There was no objection by any of the defense attorneys to these arguments.

Each defense attorney then made a closing argument to the jury. Steve Halsey, attorney for co-defendant Key, said:

" . . . and I can kind of tell by the arguments of Mr. Zimmermann [assistant district attorney] that the district attorney's office is kind of setting their sights on a new record here, a new record meaning number of years and when the Judge says that the maximum number was not life, I'm not quite sure what the maximum is. It's any term of years, and I guess you could write down there infinity and that would be impressive and that would be newsworthy. You could write down a million; of course, a million wouldn't be a maximum, or you could write down four thousand. Four thousand I think is a record here in Dallas County, so you could do that, but again, this is appealing to your emotions, . . ."

" . . . I think you have seen the records, that there are several cases. I

think my man pled out for eight years for about five cases or so, all running concurrently for eight years during one portion of his life, but you know that the State has its pound of flesh on this man as you can see from the records before you. He was reindicted as an habitual criminal, which means they find the elements, that he has been convicted before and he's guilty of the robbery offense in 1971, then it's automatic life. You know they have got their pound of flesh."

Later, Tom Boardman, appellant's attorney, said in his argument:

"I will say right now, Ladies and Gentlemen, it's asinine to consider anything else because really when he's talking about a hundred years or five hundred years or a thousand years, all you are doing is bolstering the egos of these men right here; that's what you would be doing.

"Now, if you are going to punish, punish, but don't lose your reason.

"Now, I anticipate, because I have tried several cases in my time, the last man to talk, and I don't get to talk any more, is going to get up here and kinda straighten himself up a little bit and say Ladies and Gentlemen, it's the considered opinion of Mr. Henry Wade, or of the district attorney's office, you know, like we have given this great thought and then try to impress upon you that it's come down from on high that you ought to give these men some ridiculous figure for robbing Deputy Smart knowing full well that they are going to get their third shot one of these days."

Finally, during the prosecution's closing arguments, the following occurred:

"[Assistant District Attorney]: . . . *The Judge has told you in his charge that you have no control over the exact time of years that these men will serve; that's to be determined by the Board of Pardons and Paroles, and you will look in these*

*judgments and you will find being sentenced from anywhere from two to five years and you say five years and two years later they are out committing another offense.* Look at the records. (Emphasis supplied).

"MR. McLAUGHLIN [Warren's attorney]: At this time I would object to the District Attorney's argument. The court specifically instructed the jury that they are not to consider how long the defendant will actually have to serve. Now the district attorney is going into it.

"* * *

"THE COURT: Well, *the jury is not to consider how long the defendants would be serving any time they decide to assess.*[7]  (Emphasis Supplied)

"MR. McLAUGHLIN: Will you rule on my objection?

"THE COURT: I overrule your objection."

The majority apparently would leave the impression that defense counsel properly objected to all statements quoted in its opinion. This was not the case. The statements by the prosecuting attorney in his opening argument were made without objection by any of the defense counsel. An objection must be made to preserve error upon appeal. The failure to object waives error. Bryant v. State, 455 S.W.2d 235 (Tex.Cr.App.1970); see also, Vela v. State, 516 S.W.2d 176 (Tex.Cr.App.1974).

Defense counsel did, however, object to the statement made in the prosecuting attorney's final arguments which are underlined above. If, as appellant contends, such argument is inviting the jury to apply the parole law and to take into consideration how long the defendants would actually serve, such argument is improper. Graham v. State, 422 S.W.2d 922 (Tex.Cr.App.1968).

But the majority opinion fails to reveal the full story. Following the argument in question, one of the defense attorneys objected. The court then specifically instructed the jury that they were not to consider how long the defendants would actually serve. Following the instruction, the court overruled the objection.

The proper instruction to the jury following an objection to such argument is tantamount to sustaining an objection and renders the error, if any, harmless. See Hughes v. State, 493 S.W.2d 166 (Tex.Cr. App.1973), and Dorsey v. State, 450 S.W. 2d 332 (Tex.Cr.App.1970). Normally, the defense attorney will make his objection, the court will sustain that objection and, upon motion by the defense counsel, instruct the jury to disregard the argument. Here, before actually ruling on the objection, the trial court instructed the jury not to consider how long the defendants would actually serve any time that they assessed, then he overruled the defense objection. In effect, he instructed the jury to disregard any implication by the prosecution to apply the parole law.

Even so, the argument was not reversible.

In Hoover v. State, 449 S.W.2d 60 (Tex. Cr.App.1969), we said:

"Generally, to constitute reversible error because of argument of the prosecution there must be a violation of some mandatory statute or some new fact has been injected into the case or the argument must have been manifestly improper and harmful."

None of those criteria were violated here. The majority cites Alejandro v. State, 493 S.W.2d 230 (Tex.Cr.App.1973), saying that proper jury arguments must be within the areas of a proper summation of the evidence, a reasonable deduction from the evi-

---

7. Also, in its charge, the court instructed the jury: "In determining the punishment in this case you are instructed that you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are no concern of yours."

dence, an answer to argument of opposing counsel, or a plea for law enforcement.

The whole thrust of the prosecution's argument here was to make an example out of these defendants. This was a plea to deter others who might want to commit similar crimes.

The argument complained of was in answer to argument of opposing counsel. They were the ones who spoke of the district attorney's office seeking a new maximum record. They were the ones that mentioned:

> "I think you have seen the records that there are several cases. I think my man pled out for eight years on about five cases or so, all running concurrently for eight years during one portion of his life, but you know that the State has its pound of flesh on this man as you can see from the records before you."

The subject of examining the records to see how long the defendant had actually served was first injected by the defense. See Hughes v. State, supra. The prosecution was answering defense counsel's argument.

The jury had before it evidence of quite a number of records detailing the information set out above. It is proper for the prosecuting attorney to summarize the evidence placed before the jury. This was what he was attempting to do. The remarks did not constitute a comment about the length of the sentences that would be served but were only a summation of a portion of the evidence before the jury. See Dorsey v. State, supra.

In Dorsey, the argument complained of was as follows:

> " 'The Judge in his charge tells you that you are not to consider, comment or anything else upon the length of the sentence you decide to impose that this Defendant will be required to serve. This is within the exclusive jurisdiction of the Board of Pardons and Paroles and the

Governor of the State of Texas and I'll say this that if you do not give him life or 99 years in the penitentiary they will not be able to hold him down there until he has rehabilitated; until they themselves decide he is rehabilitated, until they decide that he has been trained and come out into the free world and take his place in society—' ". 450 S.W.2d 332, at page 335.

This Court held that such remarks did not constitute a comment upon the length of term that would be served.

The argument complained of was not improper but even if considered as improper, the judge's instruction following the objection by defense counsel rendered any error harmless.

The judgments should be affirmed.

## DISSENTING OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

The State's motion for rehearing has been overruled without written opinion. The majority still refuses to discuss the fact that the argument of the prosecutor was directly from the penitentiary records and other evidence. The majority apparently believes that regardless of the record certain arguments are always reversible.

When facts are in evidence and have a bearing on the outcome, they should be discussed in the opinion. This writer does not believe that an isolated statement should be taken out of the record and show reversible error. Prosecutors have always been able, before this case, to discuss matters in evidence. When two rules of law are applicable, both should be discussed and weighed.

Recently this Court reversed a case even though no objection was made because the trial judge in his charge did not apply the law to the facts. See Harris v. State, 522 S.W.2d 199 (1975).

Is the majority opinion in the present case failing to apply the law to the facts?

Without facts the law cannot be applied. Courts do not or should not operate in a vacuum. What happened in the trial in nearly all cases is important to the decision on appeal.

The majority in holding the argument reversible is apparently doing so under the belief of the fiction that jurors do not know that convicts receive credit for good time.

The majority should be consistent in its holdings. The cases against the other defendants arising from the same trial where the same objections were made were affirmed. At least the same cases should have the same result, especially where no error has been shown.

The State's motion for rehearing should be granted and the judgment affirmed.