**William B. McBRIDE, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–84–363–CR.**

Court of Appeals of Texas,
Corpus Christi.

Feb. 27, 1986.

Roy Hudspeth, Portland, for appellant.

Thomas L. Bridges, Dist. Atty., Sinton, for appellee.

Before BENAVIDES, UTTER and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

On September 20, 1984, William B. McBride was found guilty of murder and sentenced to 99 years imprisonment in the Texas Department of Corrections. We affirm that conviction.

Appellant brings nine grounds of error on appeal. In his first three grounds, appellant contends that the State failed to prove appellant sane at the time of the offense, claiming that (1) the trial court erred in failing to grant the defendant's motion for verdict (sic) and offered no evidence as to the sanity of the accused; (2) the jury finding that the appellant was sane was contrary to the overwhelming weight and preponderance of testimony; and, (3) there is no evidence that the defendant was sane at the time of the offense.

Appellant suggests in his brief that because the facts of this case seem "somewhat bizarre," showing no motive for the accused's conduct, he should be found not guilty by reason of insanity.

It is well-established that a jury may accept or reject in whole or in part the opinion testimony of physicians, and they may accept lay testimony over that of experts. *Muro v. Houston Fire & Casualty Ins. Co.*, 329 S.W.2d 326 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.). It is not necessary for the State to present expert medical testimony that a defendant is sane in order to counter defense expert witnesses. If the affirmative defense of insanity is raised by credible evidence, the courts of appeal must review the affirmative defense evidence in the light most favorable to the implicit finding by the jury and then determine, by examining all the evidence, if any rational trier of fact could have found that the defendant failed to prove his defense by a preponderance of the evidence. This review is called for when the defendant is contesting the sufficiency of the evidence to support his conviction by asserting that he adequately proved his affirmative defense. *Van Guilder v. State*, 709 S.W.2d 178 (Tex.Crim.App.1985), *citing Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); TEX. PENAL CODE ANN. § 2.04(d) (Vernon 1974).

Here, within the cross-examination of appellant's own witnesses, the State was able to negate appellant's defense. In this case, no physician, psychiatrist or psychologist who had ever been appellant's treating physician was called to testify as to his mental condition. Instead, a psychologist (Dr. Keenan) and a psychiatrist (Dr. Kutnick), both of whom had met with the appellant on one brief occasion, for a few hours, within a month of the trial, were called upon to testify.

Dr. Keenan spent a total of 3½ hours with appellant, and felt that in that time period he had acquired a good grasp of appellant's personality and character. Keenan admitted that he relied on other information (i.e., hospital records from 1971–1982; a series of police reports) to find that the appellant was suffering from a paranoid schizophrenic disorder. Keenan testified that appellant exhibited the characteristics of a schizophrenic disorder: his chain of thought wasn't organized; he complained about the conditions in the jail; he had his Bible and would refer to it; and he wanted the doctor to take a letter to President Reagan for him. Keenan testified that appellant's jealousy of his wife evidenced his paranoid condition, that he did not know right from wrong and was insane on the day of the crime.

On cross-examination, Keenan admitted he had received his information from appellant's attorney, and that most of his work was done with juveniles. Keenan observed that each time the appellant had been in trouble with the police, he had sought mental assistance and that appellant's IQ is 120, whereas the average is 95–110. It would not surprise the doctor if appellant was able to conform his behavior to the requirements of the jail rules, and Keenan admitted that appellant was good at hiding his illness.

Dr. Kutnick was asked to determine appellant's competency to stand trial and insanity at the time of the offense. In his opinion, appellant was competent to stand trial but was insane at the time of the shooting. Kutnick testified that appellant understood everything about why he was arrested and his right to an attorney, and told Kutnick the circumstances of his arrest. He realized his actions were crazy; he could look back and see when he was crazy. The main thing bothering Kutnick is that appellant told him two different versions of what occurred at the scene of the crime. On cross-examination, Kutnick testified that all psychiatrists can be fooled; he stated that psychiatry is not an exact science, and that you cannot prove anything. He stated that, "in other words, how do you know a person is hallucinating only because they tell you," and "if a person gives you a false history then you're led astray." Both doctors admitted they could make mistakes in case studies.

The only rebuttal evidence offered by the State was a videotape of the appellant; that evidence was not offered through police reports or as a result of a few hours

diagnosis, but displayed the demeanor of appellant *firsthand.* In his videotape testimony, appellant said that if he shot anything it was a snake. He recounted the events of the day of the shooting and specifically denied shooting anyone and demanded to see his accusers.

The following excerpt from the testimony of Dr. Kutnick is relevant:

Q In your opinion, was Mr. McBride malingering when he talked to you? Was he trying to pull your leg?

A No. I know it's awfully hard to prove one way or the other, I think, in terms of description ..., the only thing that didn't fit is his not remembering about God commanding him to shoot this individual because he was the Devil's disciple. My experience is that people with schizoaffective (sic) disorder do remember those bizarre thoughts, and I don't have any explanation as to why he denied saying that or didn't remember saying that.

Q And the report—in the reports you read, he told everybody that he was the Devil's disciple. Then when he came to see you in person, he told you that the man in the car, or the boy in the car, glanced at him in a strange way and he felt threatened and shot him for that reason; is that right?

A That's correct.

Q What if, assuming that you learned of yet a third version, assuming you learned of a version that on June 21, 1984, the Defendant was able to relate every thing that happened to him on that day of June 18, 1984, but selectively forgot the entire incident at Edroy. Let's assume that you had the third version from the Defendant. Two troubles you. If you had three, would you change your opinion?

A You've always got to think of this possibility. First of all, psychiatrists can be fooled. We don't have any laboratory tests, x-rays, to kind of confirm our opinion, you know. There's the possibility that he's mentally ill. I think he's a fairly sharp individual, but he has been legitimately ill in the past, knows about mental illness because he can learn. He gets into trouble and says, "Okay. I can figure out a way. I've been crazy in the past and I know what to say to kind of make myself look crazy." That's always a possibility that can't be discounted.

It was appellant's *own* testimony (as recorded on videotape) that he knew the difference between right and wrong and it was the jury's position to decide who and what they would believe about appellant's sanity at the time of the offense.

■ Under the law in Texas, the test of criminal responsibility is not whether the accused is mentally ill or of unsound mind, but whether he is laboring under such defect of reason that he is unable to distinguish right from wrong, or to know the nature and consequences of his act. TEX. PENAL CODE ANN. § 8.01 (Vernon 1974); *Clark v. Beto,* 232 F.Supp. 255 (S.D.Tex. 1964), *rev'd,* 359 F.2d 554 (5th Cir.1966), *cert. denied,* 386 U.S. 927, 87 S.Ct. 875, 17 L.Ed.2d 799 (1967), *on remand,* 283 F.Supp. 272 (1968), *aff'd,* 415 F.2d 71 (1969). Also, a state of psychosis does not constitute insanity. *Morales v. State,* 458 S.W.2d 56 (Tex.Crim.App.1970).

Appellant's defense of insanity was disputed vigorously on cross-examination of the defense witnesses. In addition, the State's witnesses who identified the appellant as the person they saw shoot a man, offered testimony of appellant's normal behavior at the scene of the incident in question. Accordingly, we overrule appellant's "no evidence" arguments in grounds of error one and three.

■ Likewise, after reviewing the evidence presented, we cannot hold that the jury's finding that appellant was not insane was against the great weight and preponderance of the evidence as to be manifestly unjust; more importantly, we further determine under the test as set out in *Van Guilder,* that, after reviewing all the evidence concerning the affirmative defense of insanity, any rational trier of fact could have found that the defendant failed to prove his

defense by a preponderance of the evidence. Appellant's second ground of error is overruled.

◼ Appellant asserts in his eighth ground of error that the trial court erred in overruling his motion to suppress the photographic line-up because it was suggestive. In this case, all three eyewitnesses testified that there were no suggestive procedures in the line-up, and identified the appellant at trial, testifying that they could identify him without ever having had the benefit of any photographic line-up. The law is well-established that even an improper, suggestive pre-trial identification can be cured by an in-court identification, as long as the record reflects a prior observation of the accused sufficient to serve as an independent origin for the in-court identification. *Clay v. State*, 518 S.W.2d 550 (Tex. Crim.App.1975). Appellant's eighth ground of error is overruled.

In his fourth ground of error, appellant complains that the trial court erred in admitting, over timely objections, the State's argument injecting allegedly racial bias into the case.

In his closing arguments, the State's attorney made the following arguments:

"Who was he going to rid the world of, Hispanics? Was that why he took a shot at Mr. Lopez?" ... "Who was he trying to rid the world of, Juan Lopez he took a shot at? Maybe he wasn't trying to rid the world of any particular group, but we don't know. The comment was to rid the world of somebody. Well, where have you heard that before, you know? How 'bout Ayatollah, whoever he is, in Iran? He's trying to rid the world of infidels in the name of God. Are you going to find somebody like that insane or criminal just because he does it in the name of the Lord? What about Hitler, who was going to rid the world of Jews...."

We disagree with appellant that the above argument was an attempt to inject racial bias. It was instead an attack on the appellant's insanity defense.

◼ Four areas of jury argument are considered proper: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Marshburn v. State*, 522 S.W.2d 900, 901 (Tex.Crim.App.1975); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim.App.1973). In order for an improper jury argument to constitute reversible error, it must:

(1) be manifestly improper, harmful and prejudicial;

(2) be violative of a statute; or

(3) inject new and harmful facts into the case.

*Williams v. State*, 607 S.W.2d 577, 581 (Tex.Crim.App.1980); *DeBolt v. State*, 604 S.W.2d 164, 169 (Tex.Crim.App.1980); *Spaulding v. State*, 505 S.W.2d 919, 922 (Tex.Crim.App.1974); *Lovelace v. State*, 662 S.W.2d 390, 391, 392 (Tex.App.—Dallas 1983, no pet.).

The evidence indicated that the victim was Hispanic and that the appellant had also shot at the witness Juan Lopez, also an Hispanic.

*There is evidence from the defense witness Dr. Keenan that the appellant had focused on "getting rid of the person (i.e. victim) to have a better world" and because the victim was evil or an agent of the devil. Defense testimony indicated also that a factor in the determination of Dr. Keenan's opinion of insanity was that the killing was performed in public.* (Emphasis ours.)

The State asserts, by way of analogy, that not all people who kill in the name of the Lord or without any apparent reason are "insane."

The defense argued to the jury that the appellant had no motive for the killing, killed someone he had never seen, that he said something about ridding the world of someone, but there being no justification for his conduct, that this denied logic and shows that appellant was not in his right mind at the time of the crime. Evidence in the record from defense expert witness Dr. Keenan on cross-examination reflected that

the type of activities commonly known to have been committed by Hitler would make such a person as Hitler criminally insane. Defense counsel in his own argument referred to the shooting of the witness Lopez after appellant inquired as to Lopez's belief in Jesus. Finally, defense counsel argued that the issue was "was he right in his mind, was he right in his mind."

■ The issue at the guilt/innocence phase of the trial was defendant's sanity defense. We must keep in mind that the ultimate test and question for the jury was the accused's ability to know or distinguish right from wrong or know the nature or consequences of his act. The question was not whether the defendant was "right in his mind." It was the appellant's expert witness Dr. Keenan who injected the "in public," for "the good of society," "fighting evil or in the name of the Lord" factor in this case as an indication of the appellant's insanity at the time of the offense.

The State's argument asked rhetorical questions in two areas. The first dealt with reference to whom the accused was trying to "get rid of." The evidence shows that the defendant shot at two Hispanics and killed one of them. The cases cited by appellant for improper jury argument injecting race involve the State's injecting bias against the race of an accused or against the race or class of the witnesses testifying in behalf of an accused. None of the cases cited deal with an insanity defense and none relate to a rhetorical question about the motive for the killing.

The second rhetorical question area related not to race at all, but to killing in the name of religion or to get rid of evil. The mere mention of the killing of Jews, Infidels, Hitler or the Ayatollah do not in and of themselves make a jury argument improper or inject racial bias so as to require a finding of an improper jury argument and reversal.

We must take up these matters in the context of the trial and the issue presented, together with the arguments. Appellant's attorney argued that the killing of the victim and the shooting at Mr. Lopez denied logic, and argued that it was the defense that had put the expert testimony before the jury. There was evidence the appellant had said he was going to get rid of "someone" or "something." There was evidence that the appellant said, and the focus of his killing according to Dr. Keenan, was doing something in the name of the Lord or to get rid of evil; there was defense testimony that the open or public killing of someone unknown for such reasons were part of the defense experts' basis for their testimony regarding the appellant's insanity. Finally, there was defense witness evidence that the type of activity described in the argument was that of someone that was criminally insane.

■ In the light of the particular circumstances, issue of insanity, arguments and evidence involved in this case, and following the guidelines set out for us in the *Alejandro* case, we do not find that complained of argument improperly injected race as asserted by appellant. Moreover, the argument was directed to the specific evidence and argument before the jury and more specifically toward the insanity issue. We acknowledge that the argument is not a model for proper jury argument and it is not to be afforded such a status. Neither should finding on this point be interpreted as allowing an unfettered argument on behalf of the State whenever an insanity issue is raised at trial.

■ A prosecutor can ask a rhetorical question by way of argument. *Brown v. State*, 159 Tex.Cr.R. 306, 263 S.W.2d 261 (1953). The complained-of argument is both a summary of evidence at trial, and a reply to refute the defensive theory of insanity and evidence of insanity, and is permissable argument. *Alejandro* at 231. We overrule appellant's fourth ground of error.

■ In ground of error five, appellant insists that the trial court erred in overruling a motion for mistrial based on prosecutor's argument that there would never be a punishment hearing in the case unless the verdict was guilty. Appellant's counsel

had argued to the jury that (with reference to appellant's insanity defense), "The judge will tell you the only way you may make that finding is for you to say Mr. McBride did commit the crime but was insane." Finding no error in the prosecutor's statement, we overrule this ground of error.

Appellant asserts in ground of error six that the trial court erred in overruling a motion for mistrial because the prosecutor remarked in his closing argument:

Well, ladies and gentlemen, if you-all make a mistake, what might happen? You heard Dr. Kutnick say he's dangerous, this could happen again, it is likely to happen again. They make mistakes, sweep it under the carpet. They always say about doctors that they bury their mistakes. You-all make a mistake and they might bury somebody else.

Appellant argues that this was prejudicial, outside the record, and denied appellant a fair trial, citing *Hernandez v. State*, 366 S.W.2d 575 (Tex.Crim.App.1963). *Hernandez* dealt with an argument by the prosecutor that the defendant would be set free when rehabilitated, which was held to be improper because of the inference that the length of sentence the jury assessed did not matter. *Hernandez*, 366 S.W.2d at 576.

■■■ We hold the argument complained of in this case to be a proper plea for law enforcement. It is similar to arguments recently approved in *Starvaggi v. State*, 593 S.W.2d 323, 328 (Tex.Cr.App.1979) ("I hope he doesn't come knocking on one of your doors at eight o'clock in the evening ..."); *Debolt v. State*, 604 S.W.2d 164, 169 (Tex.Crim.App.1980) ("What I'm mainly concerned with is he is not out among the public, living next door to me or next door to anybody else."); and *Sanchez v. State*, 622 S.W.2d 491, 493 (Tex.App.—Corpus Christi 1981), aff'd 628 S.W.2d 780 (Tex. Crim.App.1982) ("Would you be standing next to him the next time he went berserk or one of your children or one of your friends?"). In addition, at trial, an expert witness for the defense stated that he was fearful of appellant having another violent breakdown. Appellant's wife testified that appellant had been in trouble with the law at least four times, had received mental treatment, had been released and had gotten into trouble again. Appellant's sixth ground of error is overruled.

Appellant's seventh ground of error claims error by the trial court in overruling appellant's motion for mistrial regarding the State's cross-examination of appellant's expert witness. Appellant claims that the cross-examination improperly injected racism and thus prejudiced appellant and requires reversal.

In prefacing a question to defense expert Dr. Keenan, the prosecutor began as follows:

O.K. Let's assume that we have a fellow who believes that Jews are vermin spreading across the earth, O.K.? He starts building, all over the land, barbed wire enclosed places to contain these vermin and he puts them all in there. Then he starts building where they're going to gas people. Then he digs big mass graves where they bury these people.

The defense objected and moved for mistrial claiming that this type of questioning was not founded in the evidence, was argumentative, and served no purpose. The objection and request for mistrial were overruled. The question was finally answered by the witness that such a person would be criminally insane. The appellant made no reference to racism and has preserved no error on the interjection of racism into the trial. In addition, there is no evidence that the appellant or the victim was Jewish or German.

Even if the complained-of error was properly preserved, we note that the matters related to a defense expert witness (on sanity) and not a statement argued to a jury or a question asked of a lay witness.

We have reviewed all of appellant's cited cases and they are not in point: *Allison v. State*, 157 Tex.Cr.R. 200, 248 S.W.2d 147 (1952) and *Wade v. State*, 151 Tex.Cr.R. 447, 208 S.W.2d 101 (1948) involved Black defendants and jury arguments discredit-

ing Black witnesses; *Stein v. State*, 492 S.W.2d 548 (Tex.Crim.App.1973) involved gross violation of a motion in limine in the State's repeated allusions to the defendant as a "hippie;" *Renn v. State*, 495 S.W.2d 922 (Tex.Crim.App.1973) was reversed for repeated references (at least twenty-six objections to these were sustained) which were outside the record such as "hippie," "anti-Christ," "Swastika," and "Communist;" *Jackson v. State*, 363 S.W.2d 947 (Tex.Crim.App.1963) involved a question of a witness referring to the defendant's extraneous offenses (false affidavits) and *Sovey v. State*, 172 Tex.Cr.R. 638, 362 S.W.2d 121 (1962), wherein the State alluded to an unadmitted written statement of defendant's wife while cross-examining the defendant. None of those cases involved questions asked of expert witnesses, nor sanity defenses.

The testimony of defense experts indicated the appellant's idea of ridding society of evil (purportedly the victim in appellant's mind) and the public nature of the killing were factors contributing to the conclusion that the appellant was insane at the time of the offense.

The trial court has broad discretion in determining whether the subject matter of opinion evidence is admissible. *Burns v. Bridge Engineering Corp.*, 465 S.W.2d 427 (Tex.Civ.App.—Houston 1971, writ ref'd n.r.e.). In *Winn v. State*, 136 Tex.Cr.R. 513, 126 S.W.2d 481 (1939), it was held that a question to an expert witness on mental illness on a hypothetical state of facts was a matter to be weighed by the jury and the refusal to allow the defendant to cross-examine on hypothetical facts was error.

The prosecutor did not refer to the appellant as Hitler or as the person in the hypothetical question. The question obviously dealt with the qualifications and credibility of the expert witness. Even if not waived, we find no reversible error and no showing of an abuse of the trial court's discretion in allowing the testimony under the facts of this case. Consequently, appellant's seventh ground of error is overruled.

Ground of error nine asserts cumulative error resulting from grounds 4, 5, 6, and 7. Having overruled each of these grounds, we find no cumulative error and overrule ground of error nine. Appellant's conviction is affirmed.

SEERDEN, J., filed a dissenting opinion.

SEERDEN, Justice, dissenting.

I respectfully dissent. Appellant's fourth ground of error complains of improper jury argument by the State. The argument is quoted in the majority opinion. While it is true that the defendant raised the issue of his insanity as a defense in this prosecution, the mere fact that such issue is raised gives no cause for the State to have unfettered license to bring before the jury comparisons of the defendant with the most notorious fiends and mass murderers known to history. I agree that the rules set out governing jury argument as contained in *Alejandro v. State*, 493 S.W.2d 230 (Tex.Crim.App.1973) govern arguments in this instance. I disagree with the majority that the complained of argument was in response to any legitimate issue or argument raised by defense counsel or that it came from any summation or reasonable deduction from the evidence. I would hold the argument to constitute reversible error in that it was manifestly improper, harmful, and prejudical and it injected new and harmful facts into the case by comparing this defendant to the "Ayotollah, whoever he is," and to Hitler.