

# NUMBER 13-17-00663-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ZACHARY GIDCUMB,                      **Appellant,**

**v.**

THE STATE OF TEXAS,                      **Appellee.**

### On appeal from the 25th District Court of Gonzales County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

Appellant Zachary Gidcumb appeals his conviction on six counts of aggravated sexual assault of two children, first-degree felonies. *See* TEX. PENAL CODE ANN. § 22.021. By a single issue, Gidcumb argues that the trial court should have granted his motion for a mistrial based upon the prosecutor's improper closing argument. We affirm.

## I. BACKGROUND

Gidcumb, age eighteen, lived with his parents and siblings in Smiley, Texas in 2016. His next door neighbors were a family with four young children: L.H. a one-year old, B.H., a four-year old, G.H., a six-year old, and C.H., a seven-year old.[1] Another neighbor, Tucker Nohrer, a seventeen-year old friend of Gidcumb watched the four children almost every day. The children often visited the Gidcumb house to play with Gidcumb's younger siblings on the trampoline and also to play video games with Gidcumb and his siblings, ages eleven and seventeen.

As a juvenile, Gidcumb was convicted of aggravated sexual assault of a child, a five-year old boy. When Gidcumb was released from juvenile detention in Illinois and moved with his family to Smiley in November 2014, Gidcumb was a registered sex offender and the terms of his release did not permit him to be alone with children. Gidcumb's mother advised G.H. and S.H., the four children's parents, of Gidcumb's prior conviction and the conditions of his release. Gidcumb's mother was not employed and was home most of the time. She testified that when she left the house, she almost always took Gidcumb with her. She testified she was aware of his conditions of release and worked very hard to ensure that he complied and was not left alone with children.

In February 2016, Gidcumb had minor surgery on his penis to correct an incomplete circumcision. At the conclusion of the surgery, he had a three-quarter inch mark where the excised skin was cauterized. According to his doctor who testified at

---

[1] We refer to the children and their parents by their initials to protect the children's identities. *See* TEX. R. APP. P. 9.8.

2

trial, the mark might not be noticeable after it healed.

According to Gidcumb's mother and S.H., March 11, 2016 was the last day of school before spring break and the children were out of school early that day. On March 15, 2016, B.H. and G.H. told Tucker that Gidcumb touched them inappropriately. Tucker told their parents when they each got home from work. Gidcumb was arrested on March 19, 2016. He was later indicted on multiple counts of aggravated sexual assault of the children that occurred on or about March 11, 2016 and March 14, 2016.

The children were interviewed by a forensic interviewer with the Gonzales Regional Children's Advocacy Center. Using anatomically correct dolls and drawings, G.H., the six year old, revealed that Gidcumb put his penis in G.H.'s mouth and in his anus. G.H. described the event taking place in B.H.'s bedroom, but also said he went home later. G.H. also reported that Gidcumb did the same thing to his older brother, C.H. G.H. testified at trial.

B.H. also revealed to the forensic interviewer using drawings and anatomically correct dolls that Gidcumb penetrated her vaginally and anally, kissed her on her anus and her genitalia. B.H. also told the interviewer that Gidcumb put her and C.H. on his lap with their clothes off. B.H. testified at trial that these events happened more than once. The children testified that Gidcumb's penis looked "normal."

The interviewer also spoke to C.H. who was seven. According to the interviewer, C.H. was very closed-off. He admitted that Gidcumb had done something to his siblings but would not discuss what he knew. At trial, he testified that he did not want to talk about it.

3

During closing argument, the prosecutor referenced defense counsel's remark that the surgery left Gidcumb's penis looking different than other circumcised penises and the children would have noticed. The prosecutor referred to defense counsel's statement as "the most ridiculous thing I've heard throughout this trial." Defense counsel objected, and the trial court sustained the objection. Later on the prosecutor argued:

> And if you think that the sheriff's office should have done more, you call the sheriff and you tell the sheriff that they messed up and they should have done more. You do not punish these kids. You do not deny them justice that they deserve because you are mad.

Defense counsel again objected, the trial court sustained the objection, and instructed the jury to disregard the prosecutor's statement. The prosecutor continued and later argued:

> Then I want you to think about how they were able to describe what happened to them, because the only way you come back with a not guilty verdict in this case is if you come back and you say [B.H.] and [G.H.], you're lying, you were not sexually assaulted. That's it.

Defense counsel objected, the trial court sustained, and instructed the jury to disregard. The prosecutor closed with the following argument:

> Now, ladies and gentlemen, it's your time to make your choice, and your choice is so incredibly important and so incredibly powerful. You have the choice to come back with a guilty verdict and say, We believe you. We will stand up for you. We will hold the person who stole your innocence from you accountable, or you can come back not guilty and you can let this Defendant move on to his next victim.

Defense counsel objected; the trial court sustained the objection. Defense counsel asked for an instruction for the jury to disregard and the trial court instructed the jury. Defense counsel requested a mistrial, but the trial court denied the request. The prosecutor explained to the trial court that her argument was a reasonable deduction from the evidence and "he's already had one victim, he's now had three." Defense counsel

4

objected again, and again the trial court sustained the objection, and instructed the jury to disregard.

The jury found Gidcumb guilty on all six counts and sentenced him to sixty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice on each count with his sentences to run concurrently.  Gidcumb appealed.

## II.  MOTION FOR MISTRIAL

Gidcumb's sole issue is that the trial court abused its discretion when it failed to grant his request for a mistrial.

## A.  Standard of Review

We review a trial court's ruling on a motion for mistrial for an abuse-of-discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).  We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement.  *Id.*; *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).  We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable.  *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).  Thus, a trial court abuses its discretion in denying a motion for mistrial only when no reasonable view of the record could support the trial court's ruling.  *Id.*

A mistrial is the appropriate remedy when the objectionable event is so emotionally inflammatory that a curative instruction is unlikely to prevent the jury from being unfairly prejudiced against the defendant.  *See Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004).

5

**B.    Applicable Law and Discussion**

During closing argument, the State made an appeal to the jury to find Gidcumb guilty or he would move on to his next victim.   The State also argued that a not guilty verdict would tell the children that the jury did not believe they were sexually assaulted. The jury received instructions to disregard both times.

Proper jury argument falls within one of four general categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement.   *Jacobs v. State*, 787 S.W.2d 397, 406 (Tex. Crim. App. 1990); *Lookingbill v. State*, 855 S.W.2d 66, 76 (Tex. App.—Corpus Christi–Edinburg 1993, pet. ref'd).   For an improper jury argument to constitute reversible error, it must: "(1) be manifestly improper, harmful and prejudicial; (2) be violative of a statute; or (3) inject new and harmful facts into the case."   *McBride v. State*, 706 S.W.2d 723, 727 (Tex. App.—Corpus Christi–Edinburg 1986, pet. ref'd).

The State argues that its argument was both a reasonable deduction from the evidence and a permissible plea for law enforcement.   *See Cook v. State*, 858 S.W.2d 467, 477 (Tex. Crim. App. 1993) (holding that the prosecutor's argument that defendant "is going to kill people. He's dangerous. How many times will it take before that man is forever stopped?" was both a proper summation of the evidence and plea for law enforcement); *Debolt v. State*, 604 S.W.2d 164, 169 (Tex. Crim. App. [Panel Op.] 1980) (holding a proper plea for law enforcement included the argument that "[w]hat I'm mainly concerned with is he is not out among the public, living next door to me or next door to anybody else."); *Starvaggi v. State*, 593 S.W.2d 323, 328 (Tex. Crim. App. 1979) (holding

that the State's closing argument that "I hope he doesn't come knocking on one of your doors at eight o'clock in the evening" was a permissible plea for law enforcement and a reasonable deduction from the evidence); *McBride*, 706 S.W.2d at 729 (holding that argument was a proper plea for law enforcement when prosecutor stated: "if you-all make a mistake, what might happen? . . . he's dangerous, this could happen again, it is likely to happen again. . . . They always say about doctors that they bury their mistakes. You-all make a mistake and they might bury somebody else.").

A prosecutor is permitted wide latitude in drawing inferences from the evidence provided those inferences are reasonable and offered in good faith. *Coble v. State*, 871 S.W.2d 192, 205 (Tex. Crim. App. 1993); *see also Bustillo v. State*, No. 03-00-00773-CR, 2002 WL 58222, at *8 (Tex. App.—Austin Jan. 17, 2002, no pet.) (op., not designated for publication). Moreover, "any harm resulting from an improper jury argument by the prosecutor is obviated when the objection to the instruction is sustained and the jury instructed to disregard the argument." *DeBolt*, 604 S.W.2d at 170.

"On appeal, we generally presume the jury follows the trial court's instructions in the manner presented. The presumption is refutable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions." *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (presuming jury followed trial court's instruction to limit its consideration of nude photographs of young men to one of several charged offenses); *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988).

We hold that the trial court's instruction to the jury to disregard the prosecutor's argument was sufficient to cure any prejudice and Gidcumb has not overcome the presumption that the jury followed the trial court's instruction to disregard the argument.

We overrule Gidcumb's sole issue.

### III.    CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
11th day of July, 2019.

8